ROSE REIS, Appellant, *v.* CITY OF NEW YORK et al.,
Respondents.

1. NEW YORK (CITY OF) — WHEN CITY MAY CLOSE PUBLIC STREETS —
POWERS OF BOARD OF ESTIMATE AND APPORTIONMENT — GREATER NEW
YORK CHARTER, SECTION 442. Under the Greater New York charter (L.
1901, ch. 466, § 442, as amd. by L. 1903, ch. 409) and upon compliance
with the steps therein prescribed, the board of estimate and apportionment
has the power, with the approval of the mayor, to change the map or plan
of the city by closing an existing street; under such provisions it may
close a street, never actually opened or used as a public street, although
laid out as a proposed street upon an official map of streets and avenues
proposed to be opened as public streets an l avenues of a certain township,
by commissioners appointed pursuant to law, which map, by force of
the annexation and consolidation acts, became a part of the map of the
greater city of New York, where, after the consolidation and in pursu-
ance of a resolution of the board of estimate and apportionment, proceed-
ings were instituted to open the street, and thereafter the board by a
resolution, adopted in conformity with section 990 of the charter, directed
that the title to the property required for the street should be vested in
the city of New York.

2. SAME — WHEN PROCEEDING TO CLOSE PUBLIC STREET NEED NOT
ORIGINATE IN LOCAL BOARD OF DISTRICT IN WHICH STREET IS SITUATED
— CONSTRUCTION OF SECTIONS 428, 432, 433 AND 434 OF GREATER NEW
YORK CHARTER. The closing of such street by the board of estimate
and apportionment with the approval of the mayor is not irregular and
invalid because the proceeding did not originate with the local board of
the district in which the street is located, as required by the provisions of
the charter (L. 1901, ch. 466, §§ 428, 432, 433 and 434) relating to pro-
ceedings "to open, close * * * and repair the streets, avenues and
public places * * * within the district;" the legislature intended,
by these provisions, to confer upon the local boards the authority to deal
in the first instance with applications for local improvements made to
them *by petition,* but meant to commit to the jurisdiction of the board
of estimate and apportionment, with the co-operation of the chief
executive of the city, the power of its own volition to initiate and carry
through such public improvements as they should deem for the best
interests of the city at large, irrespective of any action or lack of action
by the subordinate local boards.

3. SAME — WHEN OWNER OF LOTS ABUTTING ON PART OF STREET
CLOSED BY CITY OF NEW YORK, UNDER SECTION 442 OF THE CHARTER,
HAS NO CAUSE OF ACTION FOR DAMAGES TO HER PUBLIC EASEMENT OF
RIGHT OF ACCESS. Where the city of New York, owning all the lots
abutting on a certain street, between two streets running at right angles

thereto, together with all the right, title and interest which its grantors had in such street, has closed the street, under and in compliance with the provisions of the charter relating thereto (L. 1901, ch. 466, § 442, as amd. by L. 1903, ch. 409), between the intersecting streets, and erected a building thereon for hospital purposes, the owner of lots abutting on the same street, but in the two next adjacent blocks, facing on the street, has suffered and can suffer no actionable damage, so far as any of her public easements are concerned, by the closing of the street, when it is not intended to close any part of the street upon which any of her property abuts, or any part thereof which is opposite a block in which she owns property, and the closing and discontinuance of the street will still leave all of her lots accessible by public ways.

4. Same — Private Easement of Right of Access to and Through a Public Street, Originating from Dedication of Street by Lot Owner's Grantor — Extent and Limitation of Such Easement. While the fact, that the conveyances to such lot owner and to the city originated in a common grantor and were made with reference to a map of grantor's property upon which the street in question was laid out and thereby dedicated as a public street, entitles such lot owner to a private easement in the street for the purpose of access, which is a property right of which she cannot be deprived, nevertheless such private easement does not thereby extend to and through the whole of the street as shown on the original grantor's map; it can only extend to the next cross street or avenue on each side of the lots owned by her, and she is entitled, in the first place, to have that part of the street upon which her own property abuts kept open, and, in the second place, to have that part or block of the street which borders her premises kept open at both ends where it is crossed by and opens into intersecting streets.

*Reis* v. *City of New York*, 113 App. Div. 464, affirmed.

(Argued January 23, 1907; decided March 5, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 8, 1906, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alfred E. Sander* and *Charles S. Taber* for appellant. The resolution of the board of estimate and apportionment, directing that Hawthorne street between Kingston and Albany

avenues, be stricken from the official map, did not effect a
legal closing of that portion of the street. (*Matter of Rhine-
lander*, 68 N. Y. 107; *People ex rel. Dilzer* v. *Calder*, 89
App. Div. 503; *Matter of City of New York*, 168 N. Y.
134.)    All of the grantees of Gerard M. Stevens and their suc-
cessors in title acquired an easement in Hawthorne street as
shown on the map made by said referee, and the making of
said map and conveying with reference thereto, effected a
dedication of said Hawthorne street for street purposes,
which neither the grantor, nor any person holding under him
can impeach.    (*White's Bank* v. *Nichols*, 64 N. Y. 65; *Mat-
ter of Eleventh Avenue*, 81 N. Y. 437; *Matter of Ladue*,
118 N. Y. 213; *Lord* v. *Atkins*, 138 N. Y. 184; *Haight* v.
*Littlefield*, 147 N. Y. 338; *Story Case*, 90 N. Y. 145; *Bis-
sel* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Taylor* v. *Hopper*,
62 N. Y. 649; *Kerrigan* v. *Backus*, 69 App. Div. 329.)
These private easements were not extinguished by the open-
ing of Hawthorne street as a public street. (*Matter of
Adams*, 141 N. Y. 297; *W. Cemetery* v. *P. P., etc., R. R.
Co.*, 68 N. Y. 594; *S. A. R. R. Co.* v. *Kerr*, 72 N. Y. 330;
*Matter of Mayor, etc.*, 28 App. Div. 151.)    Even if the reso-
lution of the board of estimate and apportionment striking the
street in question from the map could be held equivalent to a
legal closing, it would merely extinguish the public ease-
ments.    Private easements in the street are not affected by
such proceedings.    (*Holloway* v. *Southmayd*, 139 N. Y. 390;
*Holloway* v. *Delano*, 139 N. Y. 412; *Taylor* v. *Hopper*, 62
N. Y. 649; *Matter of Eleventh Avenue*, 81 N. Y. 436;
*Tibbits* v. *Cumberson*, 69 App. Div. 329; *Edwards* v. *M.
L. Co.*, 48 S. E. Rep. 754.)

*William B. Ellison*, Corporation Counsel (*James D. Bell*
and *R. B. Greenwood* of counsel), for respondents.    All
private easements are extinguished when land is acquired by
condemnation proceedings for street purposes except where
specifically saved by statute.    (*McCarthy* v. *City of Syra-
cuse*, 46 N. Y. 194; *Roberts* v. *Sadlier*, 104 N. Y. 833;

*Matter of City of Rochester*, 24 App. Div. 383; *Utter v. Richmond*, 112 N. Y. 613; *Vil. of Olean v. Steyner*, 135 N. Y. 341; *City of Buffalo v. Pratt*, 131 N. Y. 293.) When the board of estimate and apportionment changed the map or plan of the city by striking therefrom that part of Hawthorne street which lies between Kingston avenue and Albany avenue, the fee of the land in the portion of the street thus closed remained in the city. (*B. P. Comrs. v. Armstrong*, 45 N. Y. 234; *Matter of Mayor, etc.*, 157 N. Y. 409.) Any damages suffered by private owners by reason of the closing of the portion of the street under consideration may be ascertained and paid under the provisions of chapter 1006 of the Laws of 1895. (*Matter of Mayor, etc.*, 157 N. Y. 409.)

WILLARD BARTLETT, J.    In order to understand this case, reference must be had to that portion of the official map of the borough of Brooklyn on which appear six city blocks, three on each side of Hawthorne street, between Troy avenue on the east and Brooklyn avenue on the west. Two of these blocks lie between Troy avenue and Albany avenue; two of them (the middle ones) lie between Albany avenue and Kingston avenue, and the third pair lie between Kingston avenue and Brooklyn avenue. The city of New York owns all the lots which abut on Hawthorne street in the two middle blocks, that is to say, the blocks between Albany avenue and Kingston avenue. The plaintiff owns a considerable number of lots in the two easterly blocks, that is to say, in those between Albany avenue and Troy avenue, and also a considerable number of lots in the two westerly blocks, that is to say, in those between Kingston avenue and Brooklyn avenue. Most of these lots belonging to the plaintiff (but not all of them) abut on Hawthorne street.

The city of New York having, as is contended, taken the necessary legal proceedings for the closing and discontinuance of Hawthorne street, between Albany avenue and Kingston avenue has, through the agency of its board of health, erected

Opinion of the Court, per WILLARD BARTLETT, J. [Vol. 188.

a hospital building upon that portion of Hawthorne street thus closed and discontinued, and threatens further to obstruct that portion of Hawthorne street for hospital purposes. The plaintiff instituted the present suit in equity to restrain the continued maintenance and further erection of such obstructions, basing her cause of action upon two grounds : (1) That the portion of Hawthorne street in question has never legally been closed ; and (2) that even if it has legally been closed in other respects the plaintiff possesses private easements therein of which she cannot be deprived without just compensation.

The assertion that the closing of this portion of Hawthorne street was not legally effected rests upon the contention that the provisions of the Greater New York charter in reference to the closing of streets have not been complied with by the city authorities. The assertion that the plaintiff is the owner of private easements of which she cannot be deprived without compensation even by a lawful closing of the street is based upon the fact that both the plaintiff and the city acquired title to the lots which they respectively own upon the six blocks in question from a common grantor, and that the conveyances to each were made with reference to a map upon which all such lots appeared as laid out and bounded upon the several streets which have been named. The doctrine invoked by the plaintiff in support of this branch of her case is the rule that where lots of land are sold and purchased with reference to a map showing them to abut upon a street or road laid out thereon all purchasers who buy with reference to the general plan disclosed by such map acquire an easement in the strips of land thus designated as streets or roads to have them permanently kept open as public ways.

The plaintiff prevailed upon the trial at Special Term, where the court held in her favor upon both points, adjudging that the proceedings taken by the municipal authorities for the closing of the portion of Hawthorne street in question were not legally effective to accomplish that purpose, and also that the plaintiff was entitled to private easements in and to the whole of Hawthorne street, as shown upon the map

according to which she acquired title, known as the Pecare map, including the right to have Hawthorne street kept open for its full width and throughout its whole length as thereon delineated, as a means of access to her property from either direction. The judgment based upon this decision has been reversed by the Appellate Division, which decided both of the principal questions involved adversely to the plaintiff and granted a new trial, and the plaintiff has now appealed to this court upon the usual stipulation for judgment absolute in the event of an affirmance here.

I will first consider the legal sufficiency of the proceedings relied upon by the city as having effected the closing or discontinuance of this part of Hawthorne street. These proceedings were undertaken in compliance with what was evidently deemed to be the authority conferred upon the board of estimate and apportionment and the mayor of the city of New York by section 442 of the Greater New York charter (Laws of 1901, chap. 466, as amended by Laws of 1903, chap. 409). The amended section cited empowers the board of estimate and apportionment, whenever and as often as it may deem it for the public interest so to do, " to change the map or plan of the city of New York, so as to lay out new streets, parks, bridges, tunnels and approaches to bridges and tunnels and parks, and to widen, straighten, extend, alter and close existing streets." Notice of its proposed action must be published for ten days in the City Record and corporation newspapers and an opportunity must be given for all persons interested in such change to be heard at a specified place and at a time not less than ten days after the first publication. After due publication of the notice and after hearing any protests and objections which there may be against the proposed change, " if the said board shall favor such change, notwithstanding such protests and objections, and the same receives the approval of the mayor, such change in the map or plan of the City of New York, * * * shall be deemed to have been made."

There is nothing in the findings of the trial court to indi-

cate that Hawthorne street between Kingston and Albany
avenues was ever actually opened or used as a public street.
It was laid out as a proposed street upon an official map of
streets and avenues proposed to be opened as public streets
and avenues in the town of Flatbush upon an official map
made in 1874 by commissioners appointed pursuant to law,
which map by force of the legislation annexing the town of
Flatbush to the city of Brooklyn and subsequently consolidat-
ing the city of Brooklyn with the city of New York became a
part of the map or plan of the greater city.  After consoli-
dation, by virtue of a resolution adopted by the board of
estimate and apportionment on March 14, 1900, a proceeding
was instituted to open Hawthorne street between Nostrand
and Albany avenues (which would embrace that portion of
the street to which this controversy relates), and about a year
afterward commissioners of estimate and assessment were
appointed in that proceeding by the Supreme Court for the
purpose of acquiring the necessary title in behalf of the city.
Section 990 of the Greater New York charter authorized the
board of estimate and apportionment under certain circum-
stances, after the commencement of a street opening proceed-
ing, to direct by a three-fourths vote that the title to any
piece of land lying within the lines of the street to be opened
should be vested in the city of New York.  Acting under the
power thus conferred, the board of estimate and apportion-
ment on July 28, 1902, directed that the title to the property
required for the opening of Hawthorne street between
Nostrand and Albany avenues should be vested in the city on
the 15th day of August, 1902.  It does not appear whether
or not any other steps were ever taken in this proceeding for
the opening of Hawthorne street.  Prior to the adoption of
the above-mentioned resolution declaring the title vested, the
board of estimate and apportionment could have discontinued
the proceeding under section 1000 of the Greater New York
charter; but the right thus to discontinue a street opening
proceeding seems by the language of that section to be
restricted to a "time before title to the lands or premises to be

thereby acquired shall have vested in the city of New York."
If, then, after the resolution vesting the title was adopted, the
municipal authorities desired to devote that portion of the bed
of Hawthorne street between Albany and Kingston avenues
to hospital purposes, they could only do so by taking the steps
prescribed by law to effect a closing or discontinuance of that
part of the street; and this they attempted to do by pursuing
the course prescribed by section 442 of the Greater New
York charter as amended in 1903, to which reference has
already been made.   At a meeting of the board of estimate
and apportionment held on December 11, 1903, resolutions
were adopted proposing to change the map or plan of the city
so as to close and discontinue Hawthorne street between
Kingston avenue and Albany avenue in the borough of Brook-
lyn, and appointing a hearing at a meeting of the board to be
held on December 29, 1903, at which the proposed action
would be considered.   Notice of the hearing was duly pub-
lished as required by section 442.   The public hearing duly
took place and thereupon the board adopted a resolution
declaring that it favored the proposed change in the map so
as to close and discontinue that portion of Hawthorne street
in question, which resolution was on the day of its adoption
duly approved by the mayor of the city of New York.

The learned counsel for the appellant contends that the
adoption of this resolution and its approval by the mayor did
not constitute a legal closing of Hawthorne street between
Albany and Kingston avenues, because the proceeding did
not originate with the local board of the district in which the
proposed closing was to take place.   For the purpose of home
rule and local improvements the city of New York is divided
into twenty-five districts, in each of which there is a local
board, which consists of the president of the borough and of
those members of the board of aldermen who represent
aldermanic districts within the territorial bounds of such local
improvement district.   Section 428 of the charter provides
that a local board shall have power, in all cases where the
cost of the improvement is to be met in whole or in part by

assessments upon the property benefited, to initiate proceedings for certain specified purposes, among which are enumerated "to open, close, extend, widen, grade, pave, regrade, repave and repair the streets, avenues and public places, and to construct sewers within the district." Section 432 makes it the duty of the president of the borough, when a petition for a local improvement within the jurisdiction of a local board has been received by him, to appoint a time for a meeting of such board, at which meeting such petition will be submitted to it; and section 433 provides among other things that the local board, after the submission of the petition and consideration of the same, " may then, as the petition shall ask, pass a resolution to bridge, to tunnel, to open, to close, to extend, to widen, to regulate, to grade, to curb, to gutter, to flag, and to pave streets," etc. Finally, by section 434 the local board is required, if it shall decide that proceedings be initiated for a local improvement, forthwith to transmit a copy of its resolution to that effect to the board of estimate and apportionment, which must promptly consider the same and approve or reject it. If approved, the resolution must be returned to the president of the borough where it originated, who may thereupon proceed in the execution of the work.

Referring to these sections of the charter, it is insisted in behalf of the appellant that they deprive the board of estimate and apportionment of any power to change the city map so as to open or close streets except in cases where the proceeding is inaugurated by a local board. I am unable to discover any such limitation or restriction either in the express language of these sections or deducible therefrom by fair implication. If the view thus contended for be correct, there would be no power in the general municipal government to set on foot any public improvement which demanded or contemplated the opening or closing of a street, no matter how desirable, without first obtaining the sanction of an official board of a local and limited jurisdiction. In that event it is quite conceivable that the selfish interests of a locality might outweigh and prevail against the interests of the community

at large.   It seems to me that the plain intent of these statutory provisions is to confer upon the local boards the authority to deal in the first instance with applications for local improvements made to them *by petition ;* but that the legislature meant to commit to the jurisdiction of the board of estimate and apportionment, with the co-operation of the chief executive of the city, the power of its own volition to initiate and carry through such public improvements as they should deem for the best interests of the city at large, irrespective of any action or lack of action by the subordinate local boards. The power of the legislature to enact laws for closing streets in the city of New York is unquestioned and its authority to employ the agency of such municipal officials as it shall choose to bring about such closing, or to prescribe the mode of procedure to be adopted for that purpose is equally clear. (*Fearing* v. *Irwin,* 55 N. Y. 486, and cases there cited.)   It is not for the courts to say that one agency should be selected for this purpose rather than another ; but even if they were at liberty to criticise legislative action in this respect, there could scarcely be any imaginable ground for such criticism growing out of the fact that the power to alter the city map so as to close streets has been vested in the board of estimate and apportionment — a body which has been deemed by the legislature sufficiently representative and responsible and trustworthy to exercise the power of granting or withholding street railroad franchises within the limits of the municipality in place and stead of the board of aldermen.   (Laws of 1905, chaps. 629, 630 and 631 ; *Wilcox* v. *McClellan,* 185 N. Y. 9.)

It is to be noted that none of the property of the plaintiff abuts upon that part of Hawthorne street which it is proposed to close.   The roadbed of this portion of the street is just one block in length, extending from Albany avenue to Kingston avenue, and the city of New York under deeds from the same predecessor in title as the plaintiff owns all the lots lying on both sides of Hawthorne street between these two avenues together with all the right, title and interest which its

grantors had in Hawthorne street.    Hence it is apparent
that the plaintiff has no grievance here in the character of an
abutting owner upon a street about to be closed.    It is not
intended to close any portion of Hawthorne street upon which
any of her property abuts or any portion thereof which is
opposite a block in which she owns property.    It is undis-
puted that the discontinuance and closing of Hawthorne
street between Albany and Kingston avenues will still leave
all her lots accessible by public ways ; and it follows that so
far as any public easements are concerned, she can suffer no
actionable damage by reason of the closing of Hawthorne
street between the two blocks owned by the city on the north
and south sides thereof.    "The question of the right or power
of a municipality to discontinue a street has frequently been
presented to the courts of this state and it has been held that
the authorities might do so when it is done in the manner
prescribed by law and when there is left to the private citi-
zen other and suitable means of access."    (*Egerer* v. *N. Y. C.
& H. R. R. R. Co.,* 130 N. Y. 108, 113, and cases there
cited.)    It is true that the presence of the city's hospital
building and the occupation of the former street bed for other
hospital purposes will make the plaintiff's property somewhat
less accessible than it has been heretofore.    This fact, how-
ever, is not enough of itself to constitute a limitation upon
the right of the city with the sanction of the legislature to
close the street.    (*Kings County Fire Ins. Co.* v. *Stevens,*
101 N. Y. 411, 418.)    While the city may not close the street
so as to prevent access to the plaintiff's premises without a
trespass it is enough if access to the plaintiff's lot is preserved
though such access may not be quite so convenient as it would
be if the street were allowed to remain open.

It is suggested that if a resolution of the board of estimate
and apportionment approved by the mayor under section 442
of the Greater New York charter was effective to close a part
of Hawthorne street, Broadway in the borough of Manhat-
tan might be closed and cease to be a public street by the
mere adoption by the board of estimate and apportionment of

a resolution striking it from the map; and this is evidently deemed by counsel an idea too monstrous to contemplate with equanimity. It may, therefore, be well to point out that the decision which we make in the present case justifies no such inference. We are dealing here with a street which appears never to have been opened in fact, and with a case where it is not shown that the closing is in any respect a pecuniary detriment to the plaintiff or an injury to her property rights either as one of the public or in her capacity as a private citizen. The statutory enactments relating to the closing of streets in the city of New York are complicated and confusing and it is not always easy to ascertain precisely what legislative enactments on the subject remain in effect since consolidation and the adoption of the Greater New York charter. Thus, in 1895, the legislature passed "An act to provide for discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than one million two hundred and fifty thousand inhabitants." (Laws of 1895, chap. 1006.) This statute, of course, could apply only to the city of New York and was, in fact accepted by the city. To what extent it now remains in force is a question of considerable doubt. Its chief purpose seems to have been to provide for the discontinuance of such streets as the local authorities might deem necessary in order to secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues in the city; and it is a matter of local history that it was designed especially to regulate the improvement of portions of Westchester county which had then recently been annexed to the city of New York. Nevertheless, this statute contains some provisions of a general nature, not applicable to merely temporary conditions and which may, therefore, still be in force, as, for example, the provisions of section 5 requiring the corporation counsel, upon the request of parties claiming to have been injured by the closing of streets, to institute legal proceedings to ascertain the compensation to which they are entitled. It is suggested in the brief of the corporation counsel in the present

case that this statute or parts of it are still operative; but it is not necessary here to decide whether this view is correct or not. The circumstances of this controversy as presented in the record before us do not bring the case within the terms of that act. All that it is necessary to decide on this branch of the case and all that we do decide is that the procedure followed by the board of estimate and apportionment and the mayor under section 442 of the charter sufficed to effect a legal closing and discontinuance of the part of Hawthorne street in question as a public street as against any claim or right of the plaintiff.

There remains to be considered the claim of the plaintiff to a private easement by virtue of which she asserts a perpetual right of way over this part of Hawthorne street, arising out of the fact that the conveyances to her and to the city originate in a common grantor and were made with reference to a map upon which Hawthorne street was laid out as a public street. "It is well settled that when the owner of land lays it out into distinct lots with intersecting streets or avenues and sells the lots with reference to such streets his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When in such a case a lot is sold bounded by a street the purchaser and his grantees have an easement in the street for the purpose of access, which is a property right." (*Lord* v. *Atkins,* 138 N. Y. 184, 191.) Assuming that Hawthorne street was legally closed by the action of the board of estimate and apportionment with the approval of the mayor, and that the public easements therein were thus effectively extinguished, it is insisted that there were private easements in the street which survived the proceedings to close it, and that the plaintiff is entitled to the application of the rule of law as above stated by Judge O'BRIEN. That a grantee under such circumstances acquires an easement of access as between him and his grantor and those deriving title under him may be and, indeed, must be conceded; but it by no means, follows, as is contended by counsel, that such easement in the case at bar extended to and

through the whole of Hawthorne street as shown on the original grantor's map. While contending for the doctrine that it extends to every street, avenue and public way indicated on such a map, the learned counsel for the appellant concedes that the courts of this state have never yet so held. In *Matter of Twenty-ninth Street* (1 Hill, 189), the grantor had sold lots and bounded the purchasers by Twenty-ninth street as it was laid down on the city map of New York. "He could have intended nothing less by his deeds," said BRONSON, J., "than a declaration that Twenty-ninth Street was, and, so far as he was concerned, should remain a public highway. I do not say that this dedication will extend to all his lands in the site of the street, however remote from the lots sold; but it will, I think, *extend to all his lands in the same block, or, in other words, to the next cross street or avenue on each side of the lots sold.* The parties must have contemplated an outlet both ways."

I think the private easement of the plaintiff in the present case extended no further. She was entitled, in the first place, to have that part of Hawthorne street kept open upon which her own property abutted. In *Holloway* v. *Southmayd* (139 N. Y. 390, 411) the grantors had bounded the granted premises upon the Bloomingdale road and included in the conveyance the easements and appurtenances thereto belonging; and this court held that "the grantors impliedly warranted to the grantee that so much of the road should perpetually exist as an open way as bordered upon the premises granted and, in legal effect, granted such usual and more or less necessary easements as would be comprehended in the free flow of light and air over and in the free use of the open way as such, *pro tanto,* and which survived the extinguishment of the public easement in the highway by act of law." Here, as has already been pointed out, no attempt has been made to close that part of Hawthorne street which borders upon the plaintiff's premises. In the second place, it would seem that the private easement of the plaintiff, based upon her purchase with reference to the Pecare map, entitled

her to have that portion of the street which borders her premises kept open at both ends. (*Taylor* v. *Hopper*, 62 N. Y. 649.) This is not held to mean, however, that a person possessing such an easement is entitled to have a street kept open at each end, no matter how remote the ends are from the grantee's property. The condition is complied with if there is access to a cross street in each direction. This seems to be as far as the doctrine of dedication by sale with reference to a plat or map has been carried by the courts of this state, although a broader rule prevails in some jurisdictions. (Elliott on Roads and Streets [2d ed.], § 120.) In *Regan* v. *Boston Gas Light Co.* (137 Mass. 37) the purpose and effect of a reference to a plan in a deed is declared to be a question dependent upon the intention of the parties, and the court says : " In the absence of an express grant, a grant by implication of an onerous servitude upon the land of the grantor, not necessary for the enjoyment of the land conveyed, is not to be presumed unless such is clearly the intention of the parties." It was there held that the defendant could close a whole series of streets shown on the plan according to which the sale was made so long as he left open a private way for the plaintiff to the highway in one direction and to the next side street in another. In *Pearson* v. *Allen* (151 Mass. 79) it is said by HOLMES, J. : " There are limits to the easements raised in this way by implication, even if there are not limits to the power of creating easements when it is attempted by express words. A reference to a plan like this, laying out a large tract, does not give every purchaser of a lot a right of way over every street laid down upon it." The doctrine of dedication and its limitations, as they seem to me to be applicable to the case at bar, are well stated by the Court of Appeals of Maryland in *Hawley* v. *Mayor, etc., of Baltimore* (33 Md. 270, 280) as follows : " The law is now too well settled to admit of any doubt that if the owner of a piece of land lays it out in lots and streets and sells lots calling to bind on such streets, he thereby dedicates the streets so laid out to public use. This

rule is founded upon the doctrine of implied covenants, and the dedication will be held to be co-extensive with the right of way acquired as an easement by the purchaser. It is upon the implied covenant in the grant to him that the dedication to public use rests, and such dedication must necessarily be measured by the limits of the right he has acquired by virtue of his grant.   *   *   *   The doctrine of implied covenants will not be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold, and there must be some point of limitation.  The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way.  To this extent will the vendor be held by the implied covenant of his deed and no further." (See, also, *M. & C. C. of Baltimore* v. *Frick*, 82 Md. 77.)

Inasmuch as Hawthorne street remains wholly open in front of those blocks upon which plaintiff's property is situated and opens into cross streets at both ends of each block, and inasmuch as there is no suggestion that the erection of the hospital building on the closed portion of Hawthorne street between Kingston and Albany avenues will in any wise obstruct the plaintiff's property so far as light and air are concerned, I am of opinion that the plaintiff has not been deprived of any private easement to which she became entitled by reason of her purchase with reference to the Pecare map.

These views require an affirmance of the order of the Appellate Division and judgment absolute should be ordered against appellant on the stipulation, with costs in all courts.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.