In re BOSTON AND BEAR SWAMP ROADS IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   February 3, 1911.)

1. EMINENT DOMAIN (§ 186*)—ACQUISITION OF LAND FOR ROADS—DISMISSAL OF PROCEEDINGS.

A proceeding to acquire land for opening and extending streets, under Greater New York Charter (Laws 1901, c. 466) § 970, authorizing the acquisition of land for streets laid out on the map of the city as therein constituted, must, at the motion of the owner, be dismissed, where no map has been filed, and the proposed streets do not appear on any official map or survey.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 500–504;  Dec. Dig. § 186.*]

2. EMINENT DOMAIN (§ 320*)—ACQUISITION OF LAND FOR STREETS OR PARKS—VESTING OF TITLE.

To vest title in the city, under Greater New York Charter (Laws 1901, c. 466) § 990, providing for vesting of title for land taken for streets or parks or other public purposes, there must be a valid proceeding for the acquisition of the land for a public use, a determination by the board of estimate and apportionment that the vesting of title is for the public interest, and the passage of a proper resolution fixing the day for the vesting of such title, and what the board may subsequently intend to do with the land thus acquired is immaterial as long as the use is a public one.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 851, 852;  Dec. Dig. § 320.*]

3. EMINENT DOMAIN (§ 167*)—ACQUISITION OF LAND FOR STREETS OR PARKS.

Under Greater New York Charter (Laws 1901, c. 466) § 970, authorizing the acquisition of land for streets or parks, the procedure for the acquisition of lands for streets and for parks is the same, and the rights and remedies of the parties are identical.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 167.*]

4. EMINENT DOMAIN (§ 320*)—ACQUISITION OF LAND FOR STREETS OR PARKS.

Under Greater New York Charter (Laws 1901, c. 466) §§ 442, 970, 990, empowering the board of estimate and apportionment to close streets, and authorizing proceedings to acquire land for streets or parks, and providing for the vesting of title to land taken for streets or parks, the board, after adopting a resolution, in proceedings to acquire land for streets, for the vesting of the title, may subsequently adopt a resolution closing the streets and providing that the land therein shall be a part of a park, and, when that is done, the only thing that remains to terminate the proceeding is to fix the compensation to be paid the owners of the land taken.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 320.*]

Appeal from Special Term, New York County.

Application by the City of New York for the acquisition of land for the Boston Road and the Bear Swamp Road.   From an order dismissing the proceedings and vacating an order appointing Commissioners of Estimate and Assessment, the parties aggrieved appeal.   Reversed.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, MILLER, and DOWLING, JJ.

L. Howell La Motte (Joel J. Squier, on the brief), for appellants.

Benjamin Trapnell, for respondents Centenary M. E. Church and others.

Thomas E. O'Brien, for respondent Land Associates.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J. On July 7, 1905, the board of estimate and apportionment of the city of New York, pursuant to the provisions of section 442 of the Greater New York Charter, as amended (Laws 1901, c. 466), changed the map or plan of the city of New York by laying out an extension of Bronx Park lying south of the Bronx and Pelham Parkway, and by modifying the street system through the same. This extension was bounded on the north by the Bronx and Pelham Parkway; on the east by the White Plains Road, Unionport Road, and the right of way of the New York & Westchester Railroad; on the south by Adams street; and on the west by Bronx Park. Title to so much of the land as was required for park purposes was duly acquired by the city prior to July 1, 1910.

On December 7, 1906, the said board directed the corporation counsel to institute proceedings to acquire the land sought to be acquired herein, which he did on May 14, 1907. Commissioners of estimate were duly appointed by the Supreme Court by order entered July 13, 1907, and their report was submitted to the court for confirmation April 22, 1909; the same being opposed by the city on the ground that the awards were excessive. On May 11, 1910, the learned justice at Special Term rendered his decision, wherein he confirmed the report of the commissioners as to the property known as damage Nos. 2, 14, 21, and 23, but refused to confirm the report as to the balance of the property sought to be taken and appointed new commissioners to take proof as to the value thereof. The order to that effect was entered July 1, 1910, and thereupon title to the four parcels of land enumerated vested in the city of New York.

It appears from the minutes of the board of estimate and apportionment of January 28, 1910, that the board was of the opinion that the plan for the extension of the park and modification of the street system as adopted by the board on July 7, 1905, would result in a number of needless subdivisions of the park area, and that it was for the interest of the public to do away with this needless subdivision and to make all the property within the limits of the park extension a part of the park and under the jurisdiction of the park department, and that it was for the public interest to make the changes shown upon the map or plan dated January 11, 1910. But also deeming it for the public interest to carry forward the improvement as shown on the map dated January 11, 1910, and at the same time to prevent the useless discontinuance of this proceeding, it adopted resolutions on July 1, 1910, pursuant to section 990 of the Charter, vesting title in the city of New York to the property within the lines of this proceeding, as well as within the lines of the proceeding for the opening of the Bronx Boulevard. On the same day, after the adoption of the foregoing resolutions, it adopted, under section 442 of the Charter, a resolution changing the map or plan of the city of New York, in accordance with the plan bearing date January 11, 1910, whereby Boston Road and Bear Swamp Road within certain limits, including the property in question, were closed and discontinued. The resolution of the board making these changes was approved by the mayor on July 13, 1910. Before the map making this change was filed, the respondents herein peti-

tioned the court for an order dismissing the petition and all proceedings had herein, and setting aside the order appointing new commissioners, and, their motion being granted, on November 14, 1910, the order now appealed from was made, which in effect vacated the entire proceeding ab initio.

It is to be noted that the city was to pay the entire cost of all property taken both in the park proceeding and in this, and that the order in question made no specific provision as to what was to become of the title to the four parcels of land, title to which had vested in the city on the confirmation of the report, quite apart from any action of the board, and the owners of which do not appear to have been represented on the hearing of the application for the order under review.

The question presented by this appeal is whether the resolution of the board on July 1, 1910, vested title in the city to all the property sought to be acquired by it in this proceeding. The city contends that it did; the respondents contend that it was invalid and failed to vest title, because the power to vest title was conferred upon the board only in case it was intended to carry forward in good faith the opening of Boston Road and Bear Swamp Road as public highways, and that it was unlawful for the board to attempt to exercise this power coincidently with the closing of the very streets for the opening of which the vesting of title was sought.

This proceeding was brought under section 970 of the Charter as a proceeding to acquire lands required for the opening and extending of Boston Road and Bear Swamp Road, and the section requires that the streets so sought to be opened shall be "duly laid out upon the map or plan of the city of New York as therein constituted," and when such a proceeding is instituted, and no such map has been filed, and the proposed street does not appear upon any official map or survey whatever, the landowner is entitled to a dismissal of the proceedings. Neumann v. City of New York, 137 App. Div. 55, 122 N. Y. Supp. 62; Matter of Citizens' Water Works Co., 32 App. Div. 56, 52 N. Y. Supp. 473. In the present proceeding such a map was duly filed originally, and the question only arises because of the contention that, as the action of the board vesting title was inoperative, when it undertook by subsequent resolution to close the streets, and such resolution was approved by the mayor, the streets disappeared from the city map, and nothing remained as a basis for the continuance of this proceeding.

The action of the board seeking to vest title in the city was taken under section 990 of the Charter, which reads as follows:

"Should the board of estimate and apportionment at any time deem it for the public interest that the title to the lands and premises required for any improvement authorized herein should be acquired by the city of New York at a fixed or specified time, the said board of estimate and apportionment may direct, by a three-fourths vote, where no buildings are upon such lands, that upon the date of the filing of the oath of the commissioners of estimate, as provided for in this chapter, or upon a specified date thereafter, and where there are buildings upon such lands, that upon a date not less than six months from the date of the filing of said oaths, the title to any piece or parcel of land lying within the lines of any such street or park, or any improvement herein authorized shall be vested in the city of New York. Thereafter, when the said commissioners shall have taken and filed said oath upon the date of such filing or upon such subsequent date as may be speci-

fied where no buildings are upon such lands, and where there are buildings upon such lands, upon the date specified by said board of estimate and apportionment, either before or after the filing of such oath, the same being not less than six months from the date of said filing, the city of New York shall become and be seized in fee in or of the easement, in, over, upon or under, as the board of estimate and apportionment may as herein provided determine, the said lands, tenements and hereditaments in the said resolution mentioned, that shall or may be so required as aforesaid, the same to be held, appropriated, converted and used to and for such purposes accordingly. * * *"

Under this section title vested as effectually as it would have done by confirmation of the report of the commissioners in the absence of a resolution. Matter of Mayor, 99 N. Y. 570, 2 N. E. 642. All that was required herein under this section, in order to vest title, therefore, was: (a) The pendency of a valid proceeding for the acquisition of the lands for a public use; (b) the determination of the board that the vesting of title was for the public interest; (c) the passage of a proper resolution fixing the day for such vesting. All these requirements are present herein. What the board may have thereafter intended to do with respect to the lands thus acquired was immaterial, as long as the use was still a public one. There is no difference in the method to be followed for the acquisition of lands for park purposes, for street purposes, or for any other public purpose. They are all embraced within section 970 of the Charter. The procedure is identical; the rights and remedies of the parties thereto are identical. The city bears the entire expense of this proceeding, and there is no question of the rights of any persons liable to an assessment for the improvement. All the land remaining to the various owners that was not taken in the park proceeding was covered by the vesting resolution, so that, when it passed, there was no abutting owner upon the proposed streets save the city itself, which also owned the streets. Provided the board of estimate and apportionment exercises its legislative powers for the purpose of a public use, its actions cannot be questioned or reviewed, and the power given it to alter the city map so as to close streets cannot be criticised. Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573; Pocantico Water Works Co. v. Bird, 130 N. Y. 249, 29 N. E. 246; Fearing v. Irwin, 55 N. Y. 486.

The passage of the two resolutions by the board did not neutralize the effect of either. The presence in the minds of the members of the board of an intention to thereafter close the streets when they passed the resolution vesting title did not void that action, for they still purposed to use the property taken for a public use, and it has been expressly held the board has the right, under section 442 of the Charter, to close a street at any time after title has vested in the city and use it for other public purposes, even though it does not appear whether or not any other steps were ever taken in the proceeding to fix the compensation for the property taken. Reis v. City of New York, supra. In the present proceeding, title as to four parcels vested in the city upon the confirmation of the reports; title as to the remainder vested upon the passage of the resolution of the board. The purpose of the city had been accomplished and all the property sought to be acquired by it had been obtained. What then became of the prop-

erty, so long as it was used for a public use, did not concern the respondents. All that remained to be done to terminate the proceeding was to fix the compensation to be paid the owners of the land taken, other than the four parcels. There is no good reason advanced why that should not be determined in this proceeding. In no other can they have a different or a greater compensation. Had title vested as to their parcels by a confirmation of the commissioner's report on July 1, 1910, they could not have complained of the subsequent resolution closing the streets on that day. How is their situation changed by the fact that title vested by resolution of the board instead of by order of the court?

It may well be that they do not desire to escape from the effect of their stipulation by which they agreed with the city that the commissioners in the park proceeding should give the pro rata value of the whole tract as found by them for what was taken in that proceeding and that the commissioners in this proceeding should in like manner give a pro rata value of what was taken here, whereby the awards in the park proceedings, being largely for rear land, were higher than they would otherwise have been, and by which they further agreed that they would not in this proceeding claim any benefit by reason of the presence of a park; the effect of rendering ineffective which stipulation would be to increase the value of the property taken herein, which is largely front property. But we fail to see any substantial reason advanced why the present is not the proper proceeding in which to determine how much they are to receive by way of award for what the city has already acquired. Any other course adopted would result in encouraging the vesting and divesting of titles in a manner which would lead to hopeless confusion.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

In re TURNER'S WILL.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. WILLS (§ 106*)—INDEFINITENESS—EFFECT.

A will whereby an owner of six leaseholds, four of which were located on an avenue and two on a street, devised "one house" to one son, "one house" to another son, and "one house" to another son, and a designated house on the street to a daughter, and designated houses on the street and avenue to another daughter, was as to the sons so indefinite that it could not be carried out, for the court could not permit the sons to elect in the order named in the will, nor adjudge that they took as tenants in common.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 244; Dec. Dig. § 106.*]

2. WILLS (§ 490*)—AMBIGUITY—EXTRINSIC EVIDENCE.

The ambiguity in the will as to the devises to the sons was a patent ambiguity, not removable by extrinsic evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1048; Dec. Dig. § 490.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes