Eder, J.
Here we have presented one of the most elusive problems in the field of condemnation law. It arises as a result of the legal closing of a part of a street, thus producing a dead-end or cul-de-sac street with access only in one direction. The question concerns the right to compensation of an owner whose property fronts on the unobstructed portion of the street.
This proceeding became necessary when the city decided to build a school, Junior High School 71, on Avenue B in the borough of Manhattan extending from Fourth to Sixth Streets, thus occupying the bed of East Fifth Street for a distance of approximately 118 feet easterly from the intersection of Avenue B. Title to all of such property so taken vested in 1951 pursuant to the usual condemnation procedure. Thereupon this portion of East Fifth Street was closed and discontinued on April 30, 1952, pursuant to resolution of the board of estimate, *980 which also directed the corporation counsel to apply to have this court ascertain the compensation “ which should justly be made to respective owners of the real property affected, damaged, extinguished or destroyed by the closing of the portion of Bast 5th Street ”. Claims were shortly thereafter filed by various owners of property on the remaining portion of East Fifth Street between Avenue C and the school property. The note of issue, however, was not served by the city until 1955 and the trial not held until a few days ago.
This proceeding is brought under title E of chapter 15 of the Administrative Code of the City of New York, entitled “ Street Closing Condemnation Procedure ” (derived from the “ Street Closing Act ” [L. 1895, ch. 1006, as amd. by L. 1923, ch. 752] ). The vital and essential principles to be followed in said procedure are' embodied in section E15-3.0 of the code, reading as follows a. The city may authorize the closing or discontinuance of such streets therein, in whole or in part, as it may be deemed necessary in order to more effectually secure and preserve the regularity and uniformity of the streets therein, or where other public necessity requires the closing or discontinuance of such streets.” (Here, of course, the street closing at Avenue B was required by “ other public necessity,” i.e., “ school and recreational ” purposes as determined by the board of estimate.) ‘1 b. Compensation and recompense shall be made to the respective owners of the real property affected or damaged by reason of any such closing and to the respective owners of the fee title to the land within the closed street for the damages caused by the taking by the city of such fee title ”. (This latter group whose street easements were directly taken together with their land for the school proper were compensated therefor in the complete awards made in the condemnation proceeding of Junior High School 71.)
The present proceeding is confined solely to the rights of the first group of owners, whose property remains on the street thus legally closed at Avenue B. Since the city has moved to dismiss all of their claims on the law as well as the facts, we shall first consider whether, as a matter of law, these claimants are entitled to be compensated for damages, if any, suffered; and if so whether such damages have as a matter of fact been proved.
With regard to the legal analysis of the problem which follows, it should be noted that the authorities in the different States of this country are not in agreement on this question of compensability to an owner whose property does not abut on the portion of a street cut off and continues to have unimpaired access in one direction, even where their statutes proiride recom *981 pense for “ damages ” by reason of the closing of a street. In fact, the majority of the jurisdictions hold that he is not so entitled despite the statutory direction couched in general language to compensate owners of property “ damaged or taken ”. In this State, while there are numerous decisions which touch the several facets of the problem, a close study is necessary to arrive at a formulation of a logical and consistent rule which under our prevailing law may be here applied. The complexity of the problem of street rights of an abutting owner and the conflicting decisions to be found in different States and even within a State itself are referred to in Sauer v. New York (206 U. S. 536, 548).
It will be helpful to subdivide the question for purposes of clarity and coherence into its component parts: (1) The right of such an owner under the Constitution (which simply provides that just compensation shall be made when private property is “ taken ” for public use) also referred to as under the common law, since without benefit of statutory implementation; (2) That right as affected by the special statute governing the particular proceeding; and, (3) If (1) and (2)‘be held not to authorize compensation generally to such an owner, whether the particular owner claimant has special rights or private easements arising by grant in the chain of title to his lands which justify the invocation in his case of the statutory mandate to compensate owners of property “ affected or damaged by reason of any such closing ”.
The only right which concerns us in this proceeding is the right or easement of access, as no interference with light and air is involved. An abutting owner has two distinct easements in a street: As a citizen, a public easement common to all; as an owner of property, a private easement which may be due simply to contiguity with that street or by virtue of special grant (this matter of private easement by grant is the subject matter of [3] above and will be later discussed).
The Legislature has supreme control over streets and highways and, when “ private interests ” are not invaded, may close them even without compensation (People v. Kerr, 27 N. Y. 188; Coster v. Mayor of Albany, 43 N. Y. 399). The inconvenience suffered by an owner of land not abutting on, but adjacent to, the discontinued portion of the highway may be somewhat greater in degree than that experienced by the general public, because of the greater frequency with which he necessarily used the highway in the past; but this does not constitute such special injury as to entitle him to damages under the Constitution and is regarded as damnum, absque injuria (Coster v. Mayor of
*982 Albany, supra; People ex rel. Bushnell v. Newell, 131 App. Div. 555). The private easement due to contiguity alone is placed on no higher plane than the public easement.
Accordingly, the rule at common law provided no remedy for damages arising from a street closing beyond the boundaries of the discontinued portion so long, of course, as some means of access was made available. Access had to be preserved but not necessarily in both directions (it should be noted that if complete access were destroyed, this would constitute a ‘ ‘ taking,” for which at all times compensation was constitutionally required). Although the property might be somewhat less accessible than before, no actionable damage by virtue of such fact alone may be said to exist (Kings Co. Fire Ins. Co. v. Stevens, 101 N. Y. 411; Reis v. City of New York, 188 N. Y. 58).
Obviously, these claimants have no standing under the common law. We next turn to consider whether the statute has enlarged the rights of an owner in their situation so as to authorize recompense for damages, if any, suffered.
It must be kept in mind that the damage claimed can be only consequential in nature, since no part of the property of any claimant has been directly taken. The remedy for a purely consequential injury resulting from the exercise of the sovereign right of eminent domain ‘ ‘ must be that, and that only, which the legislature shall give. It does not exist at common-law ” (Transportation Co. v. Chicago, 99 U. S. 635, 642).
The mere fact that the Legislature authorizes in the condemnation statute an award of compensation for property which may be injured or damaged as well as that taken, does not necessarily carry with it the implication that a liability nonexistent at common law is thereby being created.
In Matter of Grade Crossing Comrs. (166 N. Y. 69) a grade crossing act provided for land taken or which may be injured ’ ’ for which the owners “ are lawfully entitled to compensation ”. It was said, at page 74: “ This contemplates that by closing or discontinuing a street * * * property not taken may be injured, for which the owners * * * are lawfully entitled to compensation. This is not saying that whenever property is consequentially injured thereby the owner shall be lawfully entitled to compensation. It refers to existing grounds for lawful compensation and adds this remedy. We do not say that in no case does it enlarge the grounds and give validity to claims which otherwise would have none.” There it was held that the statute could not be invoked on behalf of property not on the street affected.
*983 Matter of West 151st St. (123 N. Y. S. 343) applied the same principle to chapter 1006 of the Laws of 1895 (predecessor to title E), that a statute was not to be construed as including damage to property for which no liability had previously existed unless “ expressly so extended that this was not accomplished merely by providing compensation for property ‘ ‘ damaged or affected ” as well as that “ taken ” in a street closing. Damage to property not abutting on any part of the closed street, the same fact situation as in Matter of Grade Crossing Comrs. (supra), was also held not actionable.
The Grade Crossing Elimination Acts have been similarly interpreted to deny recovery where one end of a street upon which the subject property abuts is closed as a result of the elimination, leaving access only in the other direction. In Jablowsky v. State of New York (267 App. Div. 54, affd. without opn. 292 N. Y. 652) the crossing at the intersection of claimant’s street in Rockaway with the railroad was ordered eliminated. The street was thus closed at the crossing point. Although the statute included compensation for damage to property not acquired, it was said that no new rights were thereby created nor the common-law rule changed. The Appellate Division also held (p. 58) that no recovery could be had pursuant to chapter 1006 of the Laws of 1895, as amended by chapter 752 of the Laws of 1923, ‘ ‘ for that act provides for the closing of both ends and the actual discontinuance of the thoroughfare for street purposes ” referring to the clause therein that after the date of closing ‘ ‘ such former street shall cease to be or remain for any purpose whatever, a street ”. (It may be observed that the affirmance without opinion of the Court of Appeals does not indicate approval of all threads of the reasoning employed in the Appellate Division.)
Since title E, the present law, is identical in all respects with its predecessor, including in section E15-8.0 the very clause last above quoted, it would seem that it has been authoritatively held that no remedy is created in this act for compensation to property damaged by the closing at one end only of a street. It may well be that the courts have overlooked the phrase in paragraph a of section E15-3.0 regarding closing or discontinuance of streets “ in whole or in part ” (also in the former Act) and may have failed to give it due weight in interpreting the very next paragraph, b, demarcating two distinct groups of “ respective owners,” the first being of property not taken but affected or damaged by reason of any “such” closing. Here we have a closing “ in part ” of East Fifth Street between Avenues B and C, and it might well be argued that this statute *984 has. expressly extended to the remaining property on that very block (although not, of course, to property on other blocks of East Fifth Street) a right to damages not recoverable at common law. It may be that this language is inconsistent with the clause in section E15-8.0 quoted in the Jablowsky case, but that clause might be said to be worded broadly in order to indicate the complete extinguishment of all easements after the closing, the subject matter of that subdivision, without intending to limit the provisions as to compensation in the earlier subdivision wherein the phrase “in part” does appear. In any event, the city has proceeded before, and now here, with a closing “ in part ” of a street, resulting in a closing not at both ends but only one, the street still continuing as a thoroughfare to the extent permitted.
My conclusion is that question (2) as to whether this statute authorizes compensation for damages suffered by adjacent owners in a partial street closing has not been definitely settled. It is unnecessary, however, for me to pass upon this question, as I have determined that these claimants are legally entitled to present their proof of damages by virtue of a private easement by grant to them, which comes clearly within the contemplation of property “ affected or damaged ” in the Act (Question [3] above).
This rule was clearly stated in Lord v. Atkins (138 N. Y. 184, 191): “It is well settled that when the owner of land lays it out into distinct lots, with intersecting streets or avenues, and sells the lots with reference to such streets his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an easement in the street for the purpose of access, which is a property right.” Where such “ ancient ” sale took place prior to proceedings by the city to open it as a public street, the street is said to have been dedicated by deed of the common grantor for use as a street for the benefit of all deriving title from him, and the city, being itself in such case a grantee of the common grantor, holds title to the street subject to fulfillment of that dedication. When, in the public interest, the city closes such a street subsequently or impairs to some degree the easement of access of any such grantee, recompense for damage suffered thereby must be made, albeit conceding the city’s paramount right to discontinue such street in a legal street-closing proceeding.
This private easement by grant extends only to lands on the same block, “ to the next cross street on each side of the lots *985 sold ” (Matter of Twenty-ninth St., 1 Hill 189). That was the conclusion reached in Reis v. City of New York (188 N. Y. 58, supra), where the court held that the city could, without compensation to plaintiff, close a portion of Hawthorne Street, Brooklyn, for the purpose of erecting a hospital thereon. Plaintiff’s property was on the next block of Hawthorne Street. Since none of that property abutted on the closed portion, no damage to any public easement existed; and, assuming a showing of a private easement derived from a common grantor, that could not be extended beyond the limits of the particular block now obstructed at one end. The rule, as thus limited, was, however, definitely affirmed.
The rule may also be stated in these words: A street easement by grant arises only when it is shown that the dominant tenement (ownership of the land) and the bed of the street were once the property of a common grantor. The city’s subsequent opening of the street for the public is qualified, with respect to all grantees, to require its maintenance as a street. It is true that the law has always been that the title acquired in all street-opening proceedings “ shall be kept in trust, that the same be appropriated and kept open for, or as part of a public street forever ” (Administrative Code, § B15-38.0). But, when the city legally closes a street in the public interest (§ E15-3.0), no actionable damage in favor of nonabutting owners arises because of the so-called trust unless that block and the bed of the street thereon were prior to its public opening owned by a common grantor.
When a street is opened by appropriate legal proceeding, compensation for the land included in the bed of the street must be made to the owner thereof (Matter of One Hundred & Sixteenth St., 1 App. Div. 436). Where he has conveyed all his property on that street to grantees with intent to dedicate that street to their and the public’s use, the grantees have a private easement in such street, and the owner is entitled for the fee of the bed of the street only nominal damages consisting of the value of the property taken subject to these private easements. The grantees in such case are entitled to nothing, as their easement still remains unimpaired after the city has legally opened the street to the public (City of Buffalo v. Pratt, 131 N. Y. 293, 299). But, when a street is discontinued by a city, although public easements are completely destroyed, these private easements or rights are deemed legally enforcible. Accordingly? it has been held that under chapter 1006 of the Laws of 1895 when a street is legally closed, while all easements are extinguished, the abutting owner is entitled to compensation for *986 the loss of his private easement (see Schonleben v. Swain, 130 App. Div. 521, affd. 198 N. Y. 621).
The rule has been loosely called the “ ancient street doctrine.” As pointed out in Dwornik v. State of New York (251 App. Div. 675, affd. 283 N. Y. 597), that doctrine has validity only when it appears that a common grantor has by deed dedicated the street to the use of all grantees, thus ‘ ‘ creating private easements, in the street, which cannot be taken away without compensation” (p. 676). The circumstance that such streets are generally ancient streets long in use was held not to be the criterion. Absent a showing of private easement by such a grant, the mere fact that a street has existed for over seventy-five years was deemed immaterial.
The doctrine was invoked in Matter of Hoyt (162 App. Div. 469, affd. 213 N. Y. 651), with regard to Attorney Street between Delancey and Broome Streets in this city when access to the north was prevented by the erection of Williamsburgh Bridge. The court said, ‘ ‘ It would seem that the property situated on a block upon an ancient public street is entitled to have access from each end of that block ” (p. 474). In Matter of William & North William Sts. (103 Misc. 313, affd. 188 App. Div. 668, appeal dismissed 228 N. Y. 523), Judge Lehman followed the Hoyt decision in confirming awards to owners where access in one direction on that block was shut off by the erection of Brooklyn Bridge. After discussing the Reis case and the rule of private easement by grant contemplating an outlet both ways,” he pointed out that the Hoyt opinion had quoted from the Reis and Twenty-ninth Street decisions and stated the prevailing private easement rule, ‘ ‘ though in that case there was apparently no evidence of a private easement by grant ’ ’ (p. 316). In the Williams Street case there also was no direct evidence of such a private easement, but recovery was also allowed. A careful reading of these two cases discloses that the courts based their determination pragmatically upon the applicability of the rule concerning private easements stated in the Reis and Twenty-ninth Street decisions to such ancient streets as Attorney and William Streets even in the absence of formal proof of an ancient deed by a common grantor dedicating those streets; in effect, the courts took judicial notice that in downtown Manhattan the streets have been so long in use that their dedication by a common grantor must have preceded their acquisition by the city in a street-opening proceeding. Recovery, however, as pointed out in the Dwornik case, rests not upon the age of the street but upon the existence of private easements by grant.
*987 In this proceeding a certified copy of a deed made August 20, 1817, has been produced and is considered as part of the record. The land therein conveyed is described as bounded by streets including East Fifth Street and Avenues B and C. The city opened Fifth Street between East River and First Avenue (thus including this block) as a public street on October 16, 1826, confirming same by order of this court on October 23,1826.
It is accordingly held that these claimants acquired a private easement by grant originating prior to the city’s acquisition of the bed of the street and are legally entitled to recover damages, if any, suffered as a result of the closing of such street at Avenue B, pursuant to the provisions of subdivision b of section E15-3.0 of the code.
The only question remaining is whether claimants have actually proved that they have been damaged. In this connection we must keep in mind the fact that damages ‘ ‘ by reason of such closing ” are determinable as of the date of closing, April 30, 1952, and that any subsequent happening or condition intervening between that date and the trial in October, 1955, is to be judged only with reference to the early determinative date and assessed on the basis of reasonable probability of the effect to be then expected from the closing of the street. However, the experience of this three-year period may be helpful if due allowance is made for general economic conditions as well as present temporary abnormalities and consideration given to the comparable rental and vacancy situation in similar side streets in the immediate vicinity, with a view to isolating the effect upon this block of the closing and then projecting that effect as and from April 30, 1952, upon the value of the properties affected.
Concerning apartment rental collections, it is conceded that there has been an increase rather than a decrease, this being due, of course, to the general 15% increase authorized in 1953. But this does indicate that there have been no vacancies. Claimants urge, however, that this good showing is caused entirely by the emergency shortage in accommodations and that, when a normal market obtains and controls are lifted, vacancies will increase and rentals decrease on this block by reason of its being an ‘1 undesirable ’ ’ cul-de-sac street.
Concerning stores, it appears that the main shopping of this neighborhood has been confined to Avenue B, but that the side streets, being within a permissible business zone, have had some small retail or service stores on the ground floor, the rentals ranging from $15 to $45 per month. There has always been a great turnover in them because of the unprofitable or marginal *988 nature of the business necessarily operated under such conditions. They constituted but a small percentage of the income produced by this predominantly residential block. Evidence given on behalf of claimants as to alleged deterioration in store conditions was vague and unsubstantiated. The city’s testimony indicated that store vacancies were not significant and compared favorably with that prevalent on East Fourth and Sixth Streets and that store rental income had not appreciably changed, although somewhat different types of business were in some instances being conducted. I do not find any depreciation in value with regard to the stores, because they never were significant factors on this block and the slight change, perhaps, required as to some of the businesses as a result of the closing at Avenue B will not, in my opinion, produce damage, since the substituted business tenant will pay at least the same rental as the previous marginal retailer and a conversion to residential use will probably produce at least equal, if not greater, income.
As to sales, there seem to have been only two, both of the same property and at advancing prices.
Basically claimants’ proof of damages was entirely subjective. Their expert said the estimated damage was not a matter of statistics but rather the product of his feeling and knowledge in the real estate field that both tenants and prospective purchasers would avoid a cul-de-sac street; and that as time went on, more and more vacancies would occur on this block, owners find it unprofitable to continue, and the economic useful life of the property be shortened. The city’s expert, on the other hand, testified that, in his opinion, there was no damage, as no depreciation in value on account of the closing was to be anticipated.
The city also offered evidence that to improve access it had constructed a walk-through between Fifth Street and Fourth Street on school property as well as a widened arc or traffic circle to facilitate the turning around of automobiles, the block having necessarily been changed to a two-way street. Counsel for the city referred to some action being taken to dedicate these to permanent public use. Since these are on school property and have not been legally opened as part of the street and accordingly do not belong to the people, they may not be considered as offsetting any damage which claimants may have suffered by the closing (Matter of Hoyt, supra; Matter of City of New York [Exterior St.], 285 N. Y. 455).
The school itself is in a different category. The street was closed for the purpose of erecting thereon this school and plans were filed prior to the closing. It was a fact known at that tima and cognizable as to its effect upon values in the neighborhood.
*989 Although section 14 of the Condemnation Law states that no allowance shall be made for ‘ ‘ benefits which the owners may derive from the public use for which the property is to be taken,” this applies only in appraising direct damages but not consequential damages. Where an easement is extinguished or impaired only nominal direct damages may be awarded (as its value cannot be ascertained except as appurtenant to, and with reference to, the dominant tenement, the two constituting a single entity); but consequential damages may be awarded for injury to the property to which the easement attaches, and benefits resulting from the planned use may be considered in appraising consequential damages (Matter of City of New York [Exterior St.], supra; Matter of City of New York [West Tenth St.], 267 N. Y. 212). This was aptly put in Bohm v. Metropolitan El. Ry. Co. (129 N. Y. 576, 591): “It is not offsetting injury against benefits. It is discovering whether in reality there has been any injury to the remaining land. ’ ’ In considering consequential damages to land not taken we must consider the overall effect of the partial closing and the use to which the property taken is to be legally put “ upon the whole of the property comprising the dominant tenement, that is, its advantages and its disadvantages, its benefits and injuries ” (Gilmore v. State of New York, 208 Misc. 427, 435).
I have made the statutory view and have considered all the evidence presented. I find no persuasive evidence leading to a finding of diminution in value as a result of, or to be feared from, the partial closing. Elements of safety to children and enhancement produced by the school should, in my opinion, result in no depreciation in values on this block despite the changes made necessary by the closing. It must be remembered that we are not here dealing with a busy thoroughfare having stores catering to a transient trade or wide area clientele, in which case special injury of a substantial nature would ensue from limited access and drastically curtailed automobile traffic.
The problem here involved is well summed up in Nichols on Eminent Domain (3d ed., vol. 2, pp. 403-404): “ The real difficulty is seen when the nature of the injury is analyzed * * *. The subject is thus no simple one, and, although the case of the man who has bought a valuable piece of property on a busy street and is left upon a cul-de-sac appeals to one’s sympathy, it is hard to see how a court can venture from the test of special damage usually recognized in this country without venturing into all sorts of difficulties in determining where to draw the line. If that rule works injustice in a particular class of eases, the remedy shoulfi be in the legislature
*990 Each of the claimants (with the exception of Damage Parcel 22, where it appears that the claim was filed by the present owner who acquired the property subsequent to the closing but did not receive an assignment of these alleged damages from the former owner, to whom the damages at date of closing belong) is accordingly entitled only to nominal damages for the taking away of their easement of access by way of Avenue B in the sum of $1, with interest from April 30, 1952; and as to Damage Parcel 22, no award.
Let the corporation counsel prepare and submit a tentative decree accordingly.