In the Matter of UNION TURNPIKE from Grand Central Parkway to City Line, in City of New York.

Supreme Court, Queens County, May 25, 1933.

*Arthur J. Hilly, Corporation Counsel* [*Harry B. Mintz* of counsel], for the City of New York.

*Nathan L. Goldstein, Skinner & Bermant, Henry C. Frey, Roe & Kramer, Winne & McDougal, Nugent & Nugent, Ferris & Kuh, Gray & Tomlin, Talley & Lamb* and *Edward W. Murphy*, for some of the claimants.

LOCKWOOD, J.   This proceeding involves awards for damages for property taken by the city of New York as of January 2, 1932, for the opening and widening of Union turnpike beginning at a point about three blocks easterly from Queens boulevard and running easterly to the Nassau county line.   That part of Union turnpike between Queens boulevard and Utopia parkway was paved to a width of about fifteen feet and was built up in part.   From Utopia parkway to the Nassau county line at Little Neck road, Union turnpike is practically built through farms and woodland, with the exception of the Mezick development at Creedmoor and another home development at Little Neck road.   Next to a view of the property by personal tour inspection an excellent picture of the entire section is shown by the ærial photos in evidence.   The only means of transportation other than by automobile available to residents of this section is, and has for years been, the Long Island

railroad, with stations at Kew Gardens, Jamaica, Union Hall street, Hillside, Bellaire, Queens and Bellerose, which are about one mile from Union turnpike to the east and the south. There is a trolley line and a bus line and the new City Independent subway under construction on Queens boulevard. The Jamaica and Flushing trolley line crosses Union turnpike at about One Hundred and Sixty-fourth street. There are bus lines in operation all along Hillside avenue, and the new Independent subway, in course of construction, at Hillside avenue as far as One Hundred and Seventy-eighth street. Hillside avenue runs parallel with Union turnpike over and down the hill about three-quarters of a mile to the south.

After careful consideration of all the testimony and of the exhibits, and after making a number of trips over the property, coupled with a knowledge of the property running back many years, this court makes the following awards: Damage parcels Nos. 1, 2, 3 and 4, taken by the city of New York in the Grand Central parkway proceeding, No. 5, bed of street, six cents. No. 6, taken by the city of New York in the Grand Central parkway proceeding. Nos. 6-A, 25, 28, 31, 32 and 33, a strip about 35 feet in width and 866 feet long, taken off the southerly end of a 68-acre farm on the north side of the turnpike. The city's expert figures the land at $10,000 an acre; the claimants at $18,000 per acre. The assessed value for 1932 is $1,525 per acre. There is little difference in the estimates of damages to the improvements: Area taken, three-quarters of an acre. Land, $7,200; improvements, $6,500 — total, $13,700. No. 7, bed of street, six cents. No. 7-A, bed of street, six cents. No. 8, omitted from proceeding. Nos. 9, 10, 11, 12, 14 and 16, taken by the city of New York in the Grand Central parkway proceeding. No. 13, bed of street, six cents. No. 15, bed of street, six cents. No. 16-A, a small plot 13 by 15 feet on the south side of Union turnpike which remained after taking of a larger plot, damage parcel No. 99, Grand Central Parkway proceeding; land, $200. No. 17, like adjoining parcel to the east, narrow strip taken off the front of a deep plot; land, $425. No. 18, land, $450. Nos. 19 and 20, land, $450. No. 21, land, $450. No. 22, land, $450. No. 23, land, $450. No. 24, a strip 14 feet 6 inches in depth by 138 feet long, taken off the front of a deep plot; about 3 feet taken off the front of a 1½-story dwelling and a similar strip off the front of a kennel building, also a wire fence and flagpole and damage to concrete run and other improvements. Land, $1,700; improvements, $4,000 — total, $5,700. No. 26, bed of street, six cents.

Nos. 27, 30 and 42, a strip about 14 feet in depth and 1,600 feet in length off the northerly side of the 42-acre Pettie farm; the taking comprises 22,834 square feet, for which claimant asks $1.50

per square foot, a total of $34,251, at the rate of $65,340 an acre. The city expert estimates 28 cents a square foot, about $12,200 an acre. The property is assessed at $7,300 per acre. Land, $6,500. No. 29, bed of street, six cents. No. 34, a strip 35 by 438 feet and a 2½-story frame dwelling were taken. Land, $10,000; improvements, $5,000 — total, $15,000. No. 35, a strip 35 by 290 feet and the front porch of an old 2-story dwelling. Land, $6,800; improvements, $700 — total $7,500. No. 36, land, $4,600. No. 37, land, $750; improvements, $25 — total, $775. No. 37-A, land, $475. No. 38, land, $1,400. No. 39, land, $2,400. No. 40, land, $4,300. No. 40-A, bed of street, six cents. No. 40-B, land, $7,300. No. 40-C, bed of street, six cents. No. 40-D, land, $300, No. 40-E, land, $65. No. 40-F, land, $65. No. 40-G, land, $65. No. 40-H, land, $75. No. 40-I, land, $100. No. 40-J, bed of street, six cents. Nos. 40-K and 44, land, $8,150; improvements $50 — total, $8,200. No. 41, bed of street, six cents. Nos. 43, 43-A, 43-B, and 46, strip about 850 feet long by 13 feet in depth at the westerly end and 6 feet in depth at the Parsons boulevard end; land, $8,500. No. 45, bed of street, six cents. No. 47, bed of street, six cents. No. 48, bed of street, six cents. No. 49, bed of street, six cents.

Nos. 50 and 53, the owner has a triangle, northeast corner Parsons boulevard and Union turnpike, 181 feet of frontage on Parsons boulevard, tapering to nothing at the easterly end, at or about One Hundred and Sixty-second street, with a 1,278-foot frontage on Union turnpike; a strip 38 feet in depth most of the way, tapering to nothing at the easterly end, was taken for the widening of Union turnpike. The wooden canopy adjacent to the gas station and some gas pumps were also taken. The total area of the plot before the taking was 89,101 square feet; 33,061 square feet were taken, leaving 46,040 square feet. The claimant valued his whole plot at $203,977.25, including $3,500 for improvements. The property taken at $74,387.25, plus building or improvements, $3,500 — total, $77,887.25. The city's expert valued the whole property at $92,601, including $3,500 for improvements, and the property taken at $34,561, including $1,500 for improvements. The entire plot and improvements was assessed by the city at $37,000. Land, $33,500; improvements, $1,500 — total, $35,000. No. 51, bed of street, six cents. No. 52, bed of street, six cents.

No. 54, this damage parcel comprises the plaza to the north of Union turnpike, extending from One Hundred and Sixty-second street on the west to One Hundred and Sixty-fourth street on the east, as shown on the map of North Jamaica, surveyed January 5, 1925, by Evans Bros. and filed as map No. 4108. This property

was not taxed by the city and in addition was used as a means of ingress and egress for lots 19, 21, 23, 25, and others as shown on the draft damage map; award, six cents. No. 54-A, land, $10. No. 54-B, land, $50. No. 54-C, land, $400. No. 55, bed of street, six cents. No. 56, land, $4,500. No. 56-A, bed of street, six cents. No. 56-B, land, $65. No. 56-C, land, $75. No. 56-D, land, $225. No. 56-E, bed of street, six cents. No. 56-F, land, $70. No. 56-G, land, $95. No. 56-H, land, $60. No. 56-I, land, $120. No. 56-J, bed of street, six cents. No. 56-K, land, $225. No. 56-L, land, $210. No. 56-M, bed of street, six cents. No. 56-N, land, $50. No. 56-P, land, $265. No. 57, bed of street, six cents. No. 58, bed of street, six cents. No. 59, bed of street, six cents. Nos. 60, 61 and 62, land, $3,850. No. 63, bed of street, six cents. No. 64, bed of street, six cents. No. 65, bed of street, six cents. Nos. 66 and 66-A, land, $500; improvements, $1,000 — total, $1,500.

Many of these damage parcels are lots subject to private easements as shown on the filed maps, therefore, awards less than substantial have been made: No. 66-B, land, $165. No. 66-C, land, $80. No. 66-D, land, $80. No. 66-E, land, $350. No. 66-F, bed of street, six cents. No. 66-G, land, $210. Nos. 66-H and 66-I, land, $300; improvements, $300 — total $600. No. 66-J, land, $135. No. 66-K, land, $250. No. 66-L, land, $110. No. 66-M, land, $120.

Nos. 67, 67-A, 67-B, 67-C, 67-D, 67-E, 67-F, 67-H, 67-J, 67-K, 67-L, 67-M, 67-N, 67-P, 67-R, 67-S, 67-T, 67-U, 67-V, 67-W, 67-X, and 68-A, strip about 43 feet in depth, running from the easterly side of damage parcel No. 66-M, located about at One Hundred and Sixty-sixth street as proposed to the westerly side of Utopia parkway, a distance of about 3,129 feet. This strip is along the Union turnpike frontage of the 80-acre farm conveyed by Barwin Realty Company in 1925 to the claimant. The Barwin Company prepared a map of property April, 1923, adopted by the Hillcrest Manor, Inc., and filed September 21, 1926, file No. 4998. This map shows lots at least 100 feet in depth, running northerly from the new line of Union turnpike as then proposed, which is the same line finally fixed, as shown on the damage map in this proceeding. The land taken, the strip between the northerly line of old Union turnpike and the proposed new northerly line of Union turnpike, for which an award is here to be made, was never taxed by the city authorities. The only streets physically open and in use on this tract are One Hundred and Sixty-ninth street and One Hundred and Seventieth street, from Union turnpike to Seventy-seventh road, and Seventy-seventh road from a point

about 100 feet west of One Hundred and Sixty-ninth street to a point about 100 feet east of One Hundred and Seventieth street, each of said streets having a concrete pavement about 20 feet in width between said points. The only development on this tract were thirty to forty houses built by the Hillcrest Builders, a subsidiary of Hillcrest Manor, Inc., or buildings subsequently taken over by Hillcrest Builders, Inc., erected back from the turnpike on the part of the tract just described. This development was unsuccessful. A deed recorded December 30, 1931, a few days prior to the vesting of the title of this strip in the city of New York on January 2, 1932, purports to convey from Hillcrest Manor, Inc., to Hillcrest Builders, Inc., a strip of land along the entire Union turnpike frontage of this tract to a depth of 100 feet north of the old line of Union turnpike, including, of course, the strip about 43 feet wide then taken by the city to widen the turnpike. The effect of this conveyance after the taking in this proceeding of an average of about 43 feet is to leave the remainder in lots of about 57 feet in depth back from the new line of the turnpike, thus to create a consequential damage to each and every lot of the entire frontage. The futility of this last-minute attempt to convey by a deed recorded a few days prior to the taking is shown by the fact that they failed to get a release from the holder of the purchase-money blanket mortgage on their entire tract, so that we find an alleged independent purchaser taking title to the lots 100 feet deep along the turnpike subject to a large blanket purchase-money mortgage that covers said lots and the rest of the tract; that in making the conveyance they disregarded the lots as laid down on their original filed map and in some cases cut them in half; the said original map showing the lots 100 feet in depth beginning north of the new line of Union turnpike. Also it is most important to note that the conveyance was made from Hillcrest Manor, Inc., to Hillcrest Builders, Inc., which this court finds from the evidence brought out under cross-examination at the hearing in this proceeding was a wholly owned subsidiary of the Hillcrest Manor, Inc. The court finds that at the time of said conveyance, and at the time of the trial of this proceeding, all of the capital stock of the vendee, Hillcrest Builders, Inc., was owned by the vendor, Hillcrest Manor, Inc. It appears this property was purchased by Hillcrest Manor, Inc., in August, 1925, at about $4,900 an acre. The land taken consists of about $2\frac{1}{4}$ acres. The claimants ask $111,702. The city expert estimates the value at $14,037, at the rate of $6,500 an acre. It may also be noted that prior to the vesting of title the purchase-money mortgage, a lien on all the property, was under foreclosure, the holder alleging a default in the payment of interest and taxes. While values

increased after the purchase of this property in August, 1925, they were receding from early 1929 down to the vesting of title, January, 1932, and the estimate of value at $6,500 an acre made by the city expert is a very liberal one of the fair market value of this property at the time of vesting of title. Award, $14,100. No. 67-G, bed of street, six cents. No. 67-I, bed of street, six cents. No. 69, bed of street, six cents. No. 70, land, $100. No. 70-A, land, $110. No. 71, bed of street, six cents. No. 72, land, $90. No. 72-A, land, $95. No. 72-B, bed of street, six cents. No. 72-C, land, $40. No. 72-D, land, $90. No. 73, land, $325. No. 74, land, $350. No. 75, bed of street, six cents. No. 76, land, $400. No. 77, land, $700; improvements, $25 — total, $725. No. 78, land, $300. No. 79, bed of street, six cents. No. 80, land, $300. No. 81, land, $200. No. 82, land, $225; improvements, $2,000 — total, $2,225. No. 83, land, $225; improvements, $325 — total, $550. No. 84, land, $300. No. 85, bed of street, six cents. Nos. 86 and 87, land, $1,000. No. 88, land, $300. No. 89, land, $600. No. 90, bed of street, six cents. No. 91, land, $425. No. 92, land, $300; improvements, $1,000 — total, $1,300. No. 93, land, $200. No. 94, land, $200. No. 95, land, $475. No. 96, bed of street, six cents.

No. 97, a narrow strip of land, 1,755 feet long, 10 feet in width on the westerly end, widening out to about 40 feet in width at the easterly end, is taken off the northerly edge of a proprietary 18-hole golf course property. The golf course proper runs a few feet south of the new line where a fence is maintained by the club. Part of the property taken was formerly used by the golf club as a parking space. Claimant's estimate of damage: Land, $73,972.96; building, $33,185.67; golf course, $34,182.60 — total, $141,341.23. There are about 92 acres in the tract. It was assessed for the year 1932: Land, $145,000; improvements, $17,500 — total, $162,500. In this proceeding about three-quarters of one acre of land is taken, for which the claimant asks for land alone $73,972.96, plus the damage to the building claimed, $33,185.67, and to golf course $34,182.60, or a total of $141,341.23. The city's expert figured the value of the land taken at $5,798, or at the rate of about $8,100 an acre, as against the claimant's estate. The city's golf expert figures the widening of Union turnpike increases an existing hazard and necessitates the erection of a higher wire screen fence along the turnpike. After a careful inspection of the property the court finds there is no damage to the golf club house, and that a new parking space may readily be constructed along the Utopia parkway frontage of the golf club proper, south of the present club house. The court fixes the award for land and improvements, including new high fences and new

parking space, $15,000. No. 98, bed of street, six cents. No. 99, bed of street, six cents. No. 100, bed of street, six cents. No. 101, bed of street, six cents. No. 102, land, $1,400. No. 103, land, $1,500. No. 104, land, $1,800. No. 105, land, $1,400. No. 106, bed of street, six cents. Nos. 107 and 108, land, $300. No. 107-A, land, $15. No. 109, land, $1,200. No. 110, land, $750. No. 111, bed of street, six cents. No. 112, bed of street, six cents. No. 113, bed of street, six cents. No. 114, bed of street, six cents. No. 115, land, $700. No. 116, land, $250. No. 117, land, $350. No. 118, land, $250. No. 119, land, $250. No. 120, land, $250. No. 121, land, $800. No. 122, land, $125. No. 123, land, $1,200. No. 124, bed of street, six cents. No. 125, bed of street, six cents. No. 126, at this point the new Union turnpike cuts through the Klein farm and the Wigmore tract. Claimants ask $22,974.92 for the part taken, which amounts to 100,065 square feet, about $2\frac{1}{4}$ acres. They base their claim on sales made several years before the taking of property a considerable distance to the south, near Hillside avenue. The only road frontage of any importance of this farm was on Holliswood avenue and on Grand Central parkway as vested, but not legally opened. This 100-acre farm was assessed in 1930 and 1931 at $145,000, about $1,450 an acre, and for 1932 at $124,000, or $1,240 an acre. The title vested in the city January 2, 1932. Claimant asks for the $2\frac{1}{4}$ acres taken the sum of $22,974.92, or at the rate of a little more than $10,000 an acre. The city's expert figures $11,716, or at the rate of $5,000 an acre. The court awards $12,000.

No. 127, at this point Union turnpike is being built through the so-called Wigmore tract, which originally consisted of about 800 acres, bounded generally by the Motor parkway and Black Stump road on the north, Rocky Hill road on the east, Hillside avenue on the south, and the Klein and other farms on the west. In September, 1928, the city of New York acquired for Hillside Park about 220 acres of this tract, buying the land on the hill mostly interior land with very little road frontage at private sale, after the city had invited offerings from owners of land in this section, the property purchased to be used for public park purposes. The price paid by the city was $5,250 per acre in September, 1928. At the time of this purchase Grand Central parkway and Union turnpike were projected, but not definitely laid out. Subsequently Grand Central parkway was planned to run along the southerly side of this new Hillside Park and Union turnpike along the northerly end. This would have necessitated the city taking by condemnation long strips bordering on the park on the northerly and southerly sides. Later on the map of Grand Central parkway

was amended and the line of the parkway moved to the north so as to run through the city-owned park property and thus avoid the expense of buying more land. The line of Union turnpike as proposed was not moved to the south so as to go through the land heretofore purchased by the city, so damage parcel No. 127 here taken is land which was retained by the owners of the Wigmore tract immediately to the north of the park property sold to the city for $5,250 per acre in the year 1928. At this point the Wigmore tract has very little road frontage, an ell on Black Stump road and then, nearly a mile away, a frontage on Hollis Court boulevard. Here the new road cuts right through woodland for a long distance. As pointed out, the city purchased the adjoining property from the same owners in 1928, which was the top of the market of values in this section, for $5,250 an acre. In March, 1930, when values had started on a downward trend, the city purchased 175 acres adjoining the Wigmore tract to the north, with much more and better road frontage, for $4,950 an acre. Another parcel just to the north was sold about this time at $4,000 an acre. Here the claimants for a little more than 9 acres ask $99,093.50, or about $11,000 per acre. The city expert figures $43,205, at the rate of about $4,600 plus per acre. The city assessed the property at about $4,750 per acre. The court awards $48,000, which is at the rate of $5,250 plus per acre. No. 128, bed of street, six cents. No. 129, land, $5. No. 130, bed of street, six cents. No. 131, land, $350. No. 132, the property owners ask $66,936, less $33,468, one-half off for easements, or a net claim of $33,468. This part of the Wigmore tract between Hollis Court boulevard and the old Stewart railroad right of way was laid out in lots, map of Jamaica hillside, section 1, filed July, 1926, Queens county clerk's office; Union turnpike was shown on said map as a street to the full width of the new line, and lots abutting on the north and south sides of said street for part of its length and on the side streets nearest to Hollis Court boulevard were sold off. The street was paved with cinders for at least three-quarters of its length. Thus the grantees in the deeds to these lots acquired easements in the street over Union turnpike to the full width thereof, at least from their lots westerly to Hollis Court boulevard. The easterly part of Union turnpike, about one-fourth thereof, was left in the rough, and there is no proof of abutting lots sales or of much, if any, use. Under the foregoing state of facts the court makes an award of $6,000. No. 133, bed of street, six cents. Nos. 134, 135 and 136, land, $3,500. Nos. 137 and 138, land, $3,500. No. 139, land, $100. Nos. 140, 141, 142, 143, 144, 145 and 146, land, $22,500. No. 147, bed of street,

six cents. Nos. 148 and 149, land, $4,000. Nos. 150 and 151, a little less than two acres is taken; claimant asks payment at the rate of $11,000 per acre, plus consequential damage; city expert figures land at $6,000 per acre. Court awards for all damage $14,000. No. 150-A, land, $825. Nos. 151-A, 152, 153 and 154, acquired by the city of New York in Grand Central parkway proceeding.

No. 153-A, here the city acquired title to a strip of land 100 feet in width running from Grand Central parkway east to the west side of Alley road, otherwise known as Winchester boulevard, containing about 200,000 square feet of land. The owner filed a map showing its entire plot in lots and blocks and showing Union turnpike 100 feet wide; on the south side of Union turnpike, between Two Hundred and Thirty-second street and Two Hundred and Thirty-sixth streets, houses were built and sold and conveyed to individuals together with one-half of the street. The city contends such act affected the entire plot with private easements. The city's expert testified that there was a sidewalk, curb, lights and 15-foot concrete roadway only between Two Hundred and Thirty-second and Two Hundred and Thirty-sixth streets, and that the rest of the land in Union turnpike taken in this proceeding was rolling and ungraded, and that it could not be and never had been used for a public or private highway; that it had not been staked out as a street; that there were no houses and no lots sold along the entire northerly side of Union turnpike as projected, and that the owners of the houses on the south side between Two Hundred and Thirty-second and Two Hundred and Thirty-sixth streets had access to the other part of the development over other streets which ran into and connected directly with that part of Union turnpike improved as heretofore mentioned. The court holds that the easements acquired by the grantees extend only to that part of Union turnpike which was improved and over which they obtained access to other improved streets leading to public highways. (See *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of City of New York* [*In re East 177th St. in Borough of Bronx, New York City*], 239 id. 119.) Award, $6,000. No. 155, land, $25. No. 156, land, $35. No. 157, bed of street, six cents. Nos. 158, 158-A and 158-B, land, $850. No. 159, bed of road, six cents. No. 160, land, $2,500; improvements, $50 — total, $2,550. Nos. 161, 161-A, 161-B and 161-C, land, $1,500. Nos. 162, 162-A and 162-B, land, $850. Nos. 163, 163-A, 163-B, 163-C, 163-D and 163-E, land, $2,500. No. 164, land, $150. No. 164-A, bed of street, six cents. No. 164-B, land, $50. No. 164-C, land, $80. No. 164-D, bed of street, six cents. No. 164-E, land, $40. No.

164-F, land, $80. No. 164-G, land, $90. No. 164-H, bed of street, six cents. Nos. 165, 165-A, 165-B, 165-C, 165-D and 165-E, land, $1,700. No. 166, bed of street, six cents. No. 167, bed of street, six cents. No. 168, bed of street, six cents. Nos. 169, 169-A and 169-B, land, $2,000. No. 170, bed of street, six cents. No. 171, bed of street, six cents. The court has had compiled charts showing a diagram of each plot and other data relating thereto, all taken from the exhibits in evidence. They are filed herewith and made part of this decision.

The corporation counsel is directed to prepare tentative decree accordingly.