INGRAHAM, P. J., McLAUGHLIN and CLARKE, JJ., concurred; LAUGHLIN, J., dissented.

Judgment and order reversed, new trial ordered, costs to appellant to abide event. Order to be settled on notice.

---

In the Matter of the Application of THE CITY OF NEW YORK, Appellant, Relative to Acquiring Title, etc., for the Opening and Extending of a New Avenue between Fort Washington and Haven Avenues, and Extending from West One Hundred and Seventy-seventh Street to its Northerly Terminal, etc., in the Twelfth Ward, Borough of Manhattan, City of New York.

FORT WASHINGTON SYNDICATE, Appellant; MARY COWAN and Others, Respondents.

First Department, November 15, 1912.

**Municipal corporations — street opening, city of New York — easement — private right of way — right of owner to damages.**

In a proceeding by the city of New York to acquire lands necessary to lay out a new avenue, the private easements of right of way of an owner, whose land does not abut on any part of the premises acquired, are not extinguished and he is not entitled to an award of damages therefor.

Although the value of private easements of right of way over a private road may be affected by the condemnation of such easements in *another* part of the road, they are not thereby extinguished.

SEPARATE APPEALS by the City of New York and Fort Washington Syndicate from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of July, 1910, as resettled, confirming in part the report of commissioners of estimate herein, as sustains the objections of certain parties to the confirmation of said report relating to the failure to award them damages for the taking of their easements as non-abutting owners, and directs the commissioners of estimate to make awards therefor, and returns said report to said commissioners as to the parcels in which said easements are claimed and as to parcels owned by the appellant Fort Washington Syndicate and from so much of said order as returns the report as to assessments for benefit to the commissioner of assessment for further consideration.

*Joel J. Squier* [*Charles A. Molloy* with him on the brief], for the appellant City of New York.

*Henry W. Simpson*, for the appellant Fort Washington Syndicate.

*Benno Lewinson*, for the respondents.

LAUGHLIN, J.:

This proceeding was instituted by the city of New York to acquire the lands necessary to lay out a new avenue 60 feet in width from the northerly line of West One Hundred and Seventy-seventh street to a point about 434 feet north of the northerly line of West One Hundred and Eighty-first street, between Fort Washington and Haven avenues. The respondents severally owned parcels of land fronting on Northern avenue, some distance north of West One Hundred and Eighty-first street, and they have separate easements by grant over part of the premises acquired by this proceeding south of West One Hundred and Eighty-first street. These easements had their origin in conveyances made to the respondents' predecessors in title by John A. Haven and Gurdon Buck, who,

First Department, November, 1912.        [Vol. 153.

before executing such conveyances, were joint owners of a large tract of land bounded on the north by a line about 600 feet north of the present West One Hundred and Eighty-first street at Riverside drive, and about 380 feet north of that street at Kingsbridge road (now Broadway), on the east by Kingsbridge road, on the south by the present One Hundred and Seventy-eighth street, and on the west by the Hudson river, and who had in the summer of 1836 prepared a map of this tract of land, showing three private roads, and showing it divided into twenty-one parcels, each abutting on one or more of the roads, which map they filed in the office of the register of the county of New York on the 14th day of November, 1836. One of these roads was Northern avenue, and is included within the lines of the present Northern avenue. Another was Southern avenue. The third designated " Road " extended from the southwesterly corner of the tract at the Hudson river, by a very irregular course, across the tract to Kingsbridge road. Northern avenue intersected it on the north at a point in the bed of the present West One Hundred and Eighty-first street, and from that point southerly it curved to the southeast, and in the bed of the new avenue taken by this proceeding, which is, generally speaking, parallel with, and easterly of, Northern avenue, it ran nearly directly south to a point in the bed of the present West One Hundred and Eightieth street, where it curved to the east. The conveyances from the original and intermediate owners are not set out in the record, but it has been assumed, and is conceded, that they all contained a provision with respect to these easements, in legal effect the same as those contained in the immediate deeds to the respondents. The deeds to respondents Cowan and Autenrieth contain a provision as follows: "Together with all the right, title and interest of the Four-in-hand Club, in common with one Gurdon Buck, his heirs and assigns, and the said John A. Haven, his heirs and assigns, to the free use  *  *  *  of that certain dock and three certain private roads heretofore made by the said John A. Haven and Gurdon Buck on their lands at Fort Washington for their individual accommodation, viz., the first of said private roads extending from the aforesaid dock made by the said John A. Haven and Gurdon Buck at the Hudson River

to the Kingsbridge Road and designated upon the said map by
the word (road), the second of said private roads being desig-
nated upon said map by the words ' Northern Avenue,' and
the third of said private roads being designated upon the said
map by the words ' Southern Avenue.' ''    And the deed to
respondent Busch contained the following: '' Also the right of
way and free use to the party of the second part his heirs and
assigns forever in common with others having the same
privilege to the Dock and Road marked ' Dock ' and ' Road '
on said map and also over so much of the Northern Avenue
marked on said map Northern Avenue as extends to the north-
erly line of the premises hereby conveyed    *    *    *.''    None of
the respondents owns any parcel of land abutting on the part
of the old road taken in this proceeding.    The only basis upon
which they claim to be entitled to an award of damages in
this proceeding is their easements by grant in that part of the
old road taken for the new avenue.

West One Hundred and Eighty-first street was opened by
the city from Broadway to Riverside drive in 1897; West One
Hundred and Eightieth street from Broadway to Buena Vista
avenue (which includes part of Southern avenue) in 1904; and
Northern avenue, which, as already stated, embraces within its
lines the Northern avenue laid out on said map by the origi-
nal owners, from West One Hundred and Eighty-first street to
a point about 770 feet north of said street in 1905.    Ingress
and egress to and from the lands owned by the respondents to
Broadway — formerly Kingsbridge road — is now had over
Northern avenue and West One Hundred and Eighty-first
street.    At the time this proceeding was instituted, the lands
within the lines of the new avenue in the block between West
One Hundred and Eightieth street and West One Hundred
and Eighty-first street were, so far as they embraced said
old road, subject to the easements of the grantees of said
John A. Haven and Gurdon Buck throughout this tract of
land, but to the north, West One Hundred and Eighty-first
street was open and improved and to the south, West One Hun-
dred and Eightieth street was likewise open and improved as a
public street.    In acquiring the land for West One Hundred
and Eighty-first street awards were made to unknown owners

First Department, November, 1912.          [Vol. 153.

on account of their interest in that part thereof within the lines
of said old road, and it appears that the respondents subse-
quently applied to the court, and were allowed to participate
with others in those awards. The learned counsel for the Fort
Washington Syndicate contends that the physical opening of
West One Hundred and Eighty-first street, West One Hundred
and Eightieth street and Northern avenue extinguished the
respondents' easements, and that they were compensated there-
for in the proceeding to open West One Hundred and Eighty-
first street prior to the time title to the new avenue vested in
the city. The learned counsel for the city does not agree in this
contention, but agrees with the respondents that their ease-
ments in the premises in question remained unaffected. It
must be presumed that the commissioners in the proceeding to
open West One Hundred and Eighty-first street made only such
awards as the law required. (*Matter of Mayor, etc.* [*Walton
Avenue*], 131 App. Div. 710; affd., 197 N. Y. 518.) No awards
were made directly to the respondents in that proceeding, and
if awards were therein made for their easements, such awards
were not sought by them, and they made no claim or proof
with respect thereto; but if the awards, in which they subse-
quently participated, embraced awards for those easements,
they should have been based on the difference between the
value of the private easements under said grants and the right
of the owners of the easements to use the street in common
with the public thereafter. The city did not in that proceed-
ing acquire the right to exclude the respondents from having
egress and ingress over the former right of way, and, there-
fore, the continuity of their easements remained practically
unaffected, even though technically destroyed.

The Fort Washington Syndicate owns the fee of that part of
the land acquired, in which the respondents have easements,
and it has been awarded only the value of the fee subject to the
easements. It now asks that the report of the commissioners
of estimate should be sent back to them, or to new commission-
ers, with directions to make awards for said fee unburdened
with any easements.

The order of the Special Term, however, instead of confirm-
ing the awards to the fee owner, referred the report back to

the commissioners to reconsider their action in making awards with respect to the parcels in question. The fee owner in this respect is asking for relief which has been granted in part by the order from which it appeals. Other grounds control the decision of the appeal, and we need not decide whether if the order were to be affirmed it could or should be modified by a binding direction to the commissioners as requested.

The learned counsel for the city contends that the report should have been confirmed with respect to the awards to the owner of the fee, and we agree with that contention. The theory on which the owner of the fee bases this claim is that the easements have been extinguished by the condemnation of the easements in *another* part of the road as stated. That may have affected the value of the easements, but I fail to see any theory upon which it can be said that they have been extinguished or have reverted to the owner of the fee. The respondents claimed before the commissioners that they were entitled to awards representing the value of the easements, which was excluded from the awards made to the owner of the fee. The commissioners ruled otherwise, but the learned justice at Special Term sustained this contention, and on that ground referred the matter back to the commissioners. The learned counsel for the city contends that the respondents are not entitled to awards, for the reason that their easements were merged in the title acquired by the city which was the fee in trust for street purposes. We have examined the authorities cited in support of that contention, and are of opinion that they do not sustain it. One of these authorities (*Matter of Adams*, 141 N. Y. 297) held that where land was conveyed subject to a private easement for highway purposes, and the public easement in the land was subsequently taken for street purposes, the grantor was only entitled to an award for the value of the public easement taken, less the value of the private easement created by his conveyance, and that such damages were only nominal, for the reason stated by Judge FINCH in *Matter of Village of Olean* v. *Steyner* (135 N. Y. 341) as follows: "The real burden is in no manner increased by absorbing the private in the public right, or substituting the latter in the room and stead of the former, since as bur-

dens on the land they are substantially identical." Another case cited (*Matter of City of New York*, 196 N. Y. 286) was a proceeding to acquire the fee to lands upon which a street had been laid out and used. The owner had retained the fee, and had conveyed parcels on either side of the street, by deeds giving the grantees easements therein. The commissioners made a substantial award to unknown owners. It was subsequently ordered paid to the abutting owners. The only point decided was that neither the owner of the fee nor the owners of the private easements was entitled to more than nominal damages. The court did not decide, or express an opinion, that the private easements merged in the public easement, although it was the case of an abutting owner; but held that by operation of law the abutting owners had all or more than they had received by the grant, for the reason that their easements of light, air and access had not been interrupted or impaired. In *Matter of Schneider* (199 N. Y. 581) the court merely followed the decision in *Matter of City of New York* (*supra*) and applied it to facts not stated but assumed to be the same. In *Matter of One Hundred & Sixteenth Street* (1 App. Div. 436) it was held that an abutting owner, having only a private easement for street purposes in land, the fee of which was taken by the city for public street purposes, was not entitled to an award, and the reason assigned therefor in the opinion delivered by Mr. Justice INGRAHAM is concisely stated as follows: "After it is thus taken and maintained by the public authorities, the abutting owner's easement still remains unimpaired. He has all the right in the road or highway that he had before enjoyed, and no property of his is taken by the proceeding." It has been held that a private easement by implication in a grant survives the discontinuance of public easements for street purposes acquired by accepting a subsequent dedication (*White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65); and in *Holloway* v. *Southmayd* (139 id. 390) it was held that after public easements for street purposes had been acquired the owner of the fee could still grant private easements in the public street which survived its legal discontinuance and closing. If, however, it be the effect of the three decisions on which the city relies that private easements of

abutting owners are taken, and public easements substituted therefor, that rule would not apply to the respondents, who are not abutting owners. If their private easements are taken, they have no further *easements* in the street; and doubtless to extinguish their private easements it would be necessary to make an award of at least nominal damages. If no award is made to them in this proceeding, therefore, it must be upon the theory that their easements are not taken. If they are entitled to any award, an award for substantial damages could not in any view of the case be sustained. It would have to be presumed that the city has acquired this avenue in good faith, and intends to improve it and to use it for all time for public street purposes. The possibility of a discontinuance of the avenue by the statutory consent of abutting owners, or otherwise, is so remote and improbable that if the matter were remitted to the commissioners upon the theory that the respondents are entitled to some award, no award for more than nominal damages could be sustained. It would seem, therefore, that there is no propriety, even on the theory that the respondents' easements could be taken in this proceeding, of remitting the matter to the commissioners to make a nominal award. If we confirm the report without any award to the respondents they will be better protected against any claim in the future that their private easements have been extinguished, and since there is no necessity at this time for condemning these private easements that course should be taken.

I am of opinion, however, that the private easements of the respondents are not, and could not be acquired in this proceeding, which is merely to cut off such property rights and interests as preclude the general public from enjoying a right of way over the land in question similar to that enjoyed by the respondents, and from improving and maintaining it as an open public avenue. It is not essential to the enjoyment of the public rights sought to be acquired that the private easements of respondents be condemned. The city has not acquired the fee simple absolute. It may not build upon the land or appropriate it to any use inconsistent with its use for public street purposes. The city will improve and look after the avenue as it

First Department, November, 1912.          [Vol. 153.

cares for the other public avenues and streets, and the respondents will be permitted to enjoy a better way than they had under their private grants.    Should the avenue be discontinued as a public street at any time in the future, I see no reason why the easements of the respondents will not survive, and whoever acquires the fee, which has now been acquired *for public street purposes only,* will take the same burdened with these easements.    If the easements of the respondents merged in the public easement, I am of opinion, for the reason already assigned, that they would be extinguished unless by merger is meant that their easements will remain dormant while the public easement which they will enjoy in common with the public exists, in which sense the theory may be sound.    I am of opinion that *White's Bank of Buffalo* v. *Nichols (supra),* *Holloway* v. *Southmayd (supra),* and *Matter of One Hundred & Sixteenth Street (supra),* tend to support these views, and that there is other authority therefor.    It has been held by this court in *Matter of Mayor* (28 App. Div. 151), affirmed by the Court of Appeals on the opinion delivered here (157 N. Y. 409), that a proceeding to discontinue a street is the reverse of a proceeding to open a street.    It has been held by the Court of Appeals in *Johnson & Co.* v. *Cox* (196 N. Y. 110) that no award for private easements could be made in proceedings had pursuant to the provisions of chapter 1006 of the Laws of 1895, incident to closing a public street. That case arose over the closing of Kingsbridge road, which had been acquired for public street purposes by user, the fee remaining in the abutting owners subject to private easements of access of all abutting owners created by a partition deed. The defendants in that action, who owned the fee of the part of the street upon which their property abutted, proceeded upon the theory that, by virtue of the proceedings had pursuant to the provisions of said chapter 1006 of the Laws of 1895, the street had become legally closed, and that they were entitled to fence the same in, as expressly authorized by section 2 of said statute.    Johnson & Co., one of the owners of the easement, brought an action for an injunction to enjoin such fencing in, and asserted the continued existence of its right of way under the grant.    It was contended by the defendants that the

remedy of Johnson & Co. was to obtain pursuant to the provisions of said statute compensation for the closing; but it was expressly held by the Court of Appeals, in an opinion evidently delivered with great deliberation, that private easements could not be acquired under the statute on closing a public street.

In *Matter of Mayor (Vanderbilt Ave.)* (95 App. Div. 533), followed in *Matter of Mayor (Vanderbilt Ave.)* (119 id. 882; affd., 189 N. Y. 551), it was distinctly held by this court that it was the intention of the Legislature, by the provisions of said chapter 1006 of the Laws of 1895, to authorize the condemnation and extinguishment of all easements, both public and private, that is to say, the rights of the abutting owner, merely by virtue of his ownership, on a public street (See *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268, and *Holloway* v. *Southmayd, supra*), and any easement he might have by private grant, when a public street was discontinued and closed, and this ruling was emphasized by a dissenting opinion by Mr. Justice INGRAHAM on the first appeal to this court, and a dissenting opinion by him on the second appeal concurred in by Mr. Justice CLARKE. In that case the award was made for closing the avenue to an abutting owner who did not own the fee of the street, and solely for a private easement by grant to use the street for ingress and egress. This court decided that the Statute of Limitations had run against the abutting owner's claim for damages on account of the discontinuance of the public easement, but had not run against a claim for damages for his private easements by grant which the Legislature subsequently by virtue of said statute, as we construed it, declared extinguished and authorized damages therefor. The order of this court, remitting the matter to the commissioners to make the award, contains the following: "Ordered and Adjudged that the order appealed from be modified by denying the motion of the appellant so far as it relates *to any damages which she lost by the discontinuance of the said street as a public highway,* but granting it as to damages which she may have sustained by the destruction of her private easements, and as so modified, the said order is affirmed without costs."

The report of the commissioners, showing the basis upon

which they awarded $2,000 for such private easements, contains the following: "For damages to the said premises by reason of the extinguishment and destruction of all private easements appurtenant to said premises, whether created by private grant or otherwise, over that part of old Quarry road, which lies between the said premises and East One Hundred and Seventy-eighth street, between Webster Avenue and Vanderbilt Avenue West."

The Court of Appeals affirmed the order confirming that award without opinion. That decision is cited in the later decision of *Johnson & Co.* v. *Cox* (*supra*) as if it related to easements of light, air and access incident to ownership of land abutting on a public street, which was not the case, and while it is to be presumed that if it had been intended to overrule the earlier case, it would have been so stated in the opinion, yet it is difficult to perceive the theory upon which a private easement by grant, existing at the time a street is closed, is extinguished if it exists as to that part of the closed street which is directly in front of the lands to which it is appurtenant, but not, if the abutting owner owns the fee in front of his land and has a private easement over the rest of the street, which is closed. In *Matter of Mayor, etc.* (*Walton Avenue*) (*supra*), we construed the decision of the Court of Appeals in *Matter of Mayor* (*Vanderbilt Avenue*) (*supra*), as authoritatively adjudicating that all easements, public and private, are extinguished when a street is closed pursuant to the provisions of said chapter 1006 of the Laws of 1895. Assuming that those decisions are to be deemed to be consistent, and both stand as the law, then it appears that the Court of Appeals has drawn a distinction between private easements owned by an abutting owner, immediately in front of or adjacent to his premises, in a public street, and those owned by him in other parts of the street when he happens to own the fee in the public street in front of his premises, and that the former are extinguished when the street is closed, but the latter are not. However this may be, it seems to me quite clear that if the private easements of an owner abutting on a public street closed, in other parts of the street than those directly in front of his premises are not extinguished when

the street is, then surely the private easements of an owner, whose land does not abut on any part of the street closed, would not be extinguished by the closing of the street. If, as was held in *Johnson & Co.* v. *Cox* (*supra*) and *Holloway* v. *Southmayd* (*supra*), the public on discontinuing or closing a street, are not interested in extinguishing private easements so that the street may be physically closed, it would seem to follow that on acquiring even the fee to land *for public street purposes*, the public are not interested in condemning private easements of right of way which are consistent with the use to which the land is to be devoted, for public purposes. In the case at bar it is not essential to the enjoyment of the public rights that the private easements of the respondents in part of the premises acquired should be extinguished, for the respondents may continue to enjoy them without other interruption than such as is incident to the improvement of the public street, which presumably will inure to their benefit, as well as to the benefit of the public.

Two parcels not affected by the easements are owned by the Fort Washington Syndicate, and the awards made therefor have likewise been returned to the commissioners. No reason for not confirming these awards is disclosed by the record, and no argument has been made with respect thereto.

It follows that the order should be reversed, with ten dollars costs and disbursements, and motion to confirm the report of the commissioners granted, with ten dollars costs.

INGRAHAM, P. J., SCOTT, MILLER and DOWLING, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion to confirm report granted, with ten dollars costs.