**UNITED STATES of America,**
**Appellant,**

v.

**POPE & TALBOT, INC., a corporation,**
**Appellee.**

**No. 16801.**

United States Court of Appeals
Ninth Circuit.

June 14, 1961.

Rehearing Denied Aug. 2, 1961.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, A. Donald Mileur, Attys., Dept. of Justice, Washington, D. C., Clarence E. Luckey, U. S. Atty., Portland, Or., for appellant.

Mautz, Souther, Spaulding, Kinsey & Williamson and John L. Schwabe and James B. O'Hanlon, Portland, Or., and John E. Jaqua, Eugene, Or., for appellee.

Before JERTBERG, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

The United States appeals from an award of compensation for lands of Pope & Talbot, Inc., taken in eminent domain. It contends that in two respects the jury improperly was invited to take into consideration elements of severance damage as to which Pope & Talbot was not entitled to compensation.

The proceeding is for the condemnation of 1,454.10 acres of timberland located in Lane County, Oregon, for use in connection with the construction and operation of the Hills Creek Dam Project on the middle fork of the Willamette River, a federal navigation and flood control project. The land consisted of fifteen different tracts located upon both sides of the river and interspersed in checkerboard fashion with federal forest service lands. The taking occurred May 31, 1957.

Appellee, in 1946, acquired 31,254 acres in this area which at that time was a completely undeveloped forest area. Appellee entered upon a long range program to utilize its timber acquisitions. Sawmills, wood products plants, housing facilities and machine shops were built at the entrance to the basin. A road system was laid out with the cooperation of the government to serve the needs of both. It was agreed that the appellee would construct the road, with the cost to be shared in ratio to the ownership of timber within the basin: 71% by the government and 29% by the appellee. Appellee granted an easement to the government for that portion of the road which passed over its lands and the government issued a revocable use permit to appellee covering that portion of the road passing over government lands. The floor of the valley is flat, but the terrain paralleling it is steep, rugged, mountainous country. The main road through the basin, as constructed by appellee, ran along the floor of the valley near the river. The Hills Dam Project flooded the lands of appellee appropriated by the government, including the roadway.

The dam itself was located about a mile upstream from appellee's plant. It is over three hundred feet high and backs up a lake approximately forty miles in circumference which forms a large artificial barrier squarely in the midst of appellee's operations. New roads of necessity took to the side hills and circled the lake.

The judgment of the district court, pursuant to jury verdict, awarded compensation in the sum of $595,000.00. In the district court the United States had contended that appellee's operations in this basin did not constitute a unitary and integrated use. The jury found

against the United States on this contention [1] and the point is not now pressed.

The principal issue upon appeal relates to appellee's right to compensation for injury resulting from the flooding of the original road.

Appellee in the district court contended that it owned a property interest in the road and was entitled to compensation for the taking of that interest. The district court ruled against appellee in this respect. The jury was told:

"The Court has ruled that the defendant was using the access as it existed at the time of the taking as a permittee only. And that the defendant's use thereof was subject to the paramount right of the government to deny anyone further use. Therefore, [it was] without a duty to pay compensation for any loss or damage which might result to the defendant by reason of the closure of the route and cancellation of the permit."

The court did, however, recognize that appellee was entitled to compensation for severance damage to its remaining lands caused by loss in market value by virtue of reduced accessibility due to the barrier which the lake formed. The jury was so instructed. The government assigns as error the giving of this instruction and the introduction of evidence as to the extent of damage due to reduced accessibility.

Upon this appeal the government reverts to its contention that appellee is not entitled to compensation for the taking of any interest in the flooded road. In the light of the district court ruling on this point, we find no issue with respect to it.

The question, as we view it, is whether appellee is entitled to severance damage for loss in market value of its remaining lands due to the use to which the government has put the land taken.

In United States v. Grizzard, 1910, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165, it was held that compensation for a taking in eminent domain must include not only the market value of the part appropriated but also the damage to the remainder resulting from such taking, embracing injury due to the use to which the part appropriated is to be put. The court stated at page 184 of 219 U.S. at page 164 of 31 S.Ct.:

"If, as the court below found, the flooding and taking of a part of the plaintiffs' farm has depreciated the usefulness and value of the remainder, the owner is not justly compensated by paying for only that actually appropriated, and leaving him uncompensated for the depreciation over benefits to that which remains."

Further, at page 185 of 219 U.S., at page 164 of 31 S.Ct., the court stated:

"To say that such an owner would be compensated by paying him only for the narrow strip actually appropriated, and leaving out of consideration the depreciation to the remaining land by the manner in which the part was taken, and the use to which it was put, would be a travesty upon justice."

In Campbell v. United States, 1924, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328, light was cast on the Grizzard rule. In that case the United States had taken 1.81 acres of land to be part of the site for a nitrates plant. The entire tract, including lands acquired from others, comprised 1,300 acres. After placing on the tract substantial improvements incidental to industrial use, the government project was abandoned and the property put up for sale. The trial court allowed as separate items of damages the value of the area taken, the damages to the re-

1. The jury verdict returned in the form required by the court was as follows:
  "1. Do you find that the defendant's operation in the middle fork drainage constituted a unitary and integrated use on May 31, 1957? Answer: Yes.
  "2. What amount do you fix as just compensation for the defendant in this case? Answer: $595,000.00."

mainder resulting from the taking and the damage to the remainder resulting from the uses to be made of the lands acquired from others. The last item of damages was based chiefly upon the probability that the tract, improved as it had been by the United States, would be sold and used for industrial purposes. The Supreme Court rejected this last item of damages. It ruled at page 372 of 266 U.S., at page 117 of 45 S.Ct.:

"We think that plaintiff's contention is not sustained. The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking."

In reaching this conclusion, the court stated at page 371 of 266 U.S., at page 116 of 45 S.Ct.:

"The land taken from the plaintiff was not shown to be indispensable to the construction of the nitrate plant or to the proposed use of the other lands acquired by the United States. The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not constitute a taking of his property. Richards v. Washington Terminal Co., 233 U.S. 546, 554 [34 S.Ct. 654, 58 L.Ed. 1088, L.R.A.1915A 887]. Plaintiff had no right to prevent the taking and use of the lands of others * * *."

West Virginia Pulp & Paper Company v. United States, 4 Cir., 1952, 200 F.2d 100, was a case in which land was taken to provide a site for the storage of gasoline by the air force. The land taken was 44 acres out of a tract of 413 acres held by the owner for plant expansion. Appellant sought to show that the proposed use of the land taken depreciated the value of the remainder of its tract. The evidence was excluded and the court of appeals reversed. Campbell was distinguished, the court stating at page 103:

"In this case, however, the claim for damages arises not from the use of land acquired from others but from damage done to the remainder of a unitary holding from the use made of the part thereof that has been taken."

■ The case before us would seem to fall between Campbell and West Virginia Pulp and Paper Company. Here the damaging use embraces the property taken and also adjoining property of the United States. The reasoning of the court in Campbell, however, convinces us that West Virginia Pulp and Paper Company should control. With reference to circumstances regarded as significant in Campbell, we note that here the land taken was indispensable to the dam project; that damages resulting to the remainder from the use of the land taken are inseparable from damages resulting to the remainder from the use of government land. Further, we note and regard as significant the fact that the land taken did not form an inconsequential part of the tract ultimately put to the damaging use. It was not only indispensable; its contribution to the project and to the damage produced by the project was substantial.

We conclude that under the facts of this case the loss in market value of the remainder (due to the fact that the lake created a condition reducing the accessibility of those lands) was rationally attributable to the use to which the taken lands were put; that appellee was entitled to compensation for such damage; that neither the receiving of evidence nor the instructions to the jury upon this point constituted error.

■ The United States contends that the district court erred in permitting the jury to assess severance damage to the remainder of appellee's lands due to increased fire hazard resulting from increased recreational use of the area.

Evidence was introduced over objection as to depreciation in value due to this hazard. The jury was told:

"If you should find from a preponderance of all of the evidence in the case that by reason of the taking of defendant's property by the government that the risk of fire has been increased, then you are instructed that you may take such consideration into account in determining defendant's damage or depreciation, if any, to its remaining lands in the minds of a reasonable intending purchaser."

This we are convinced was error.

No fire hazard can be found from the flooding of the lands taken from appellee. The district court apparently proceeded upon the indisputable thesis that the lake would attract people and that people bring fire. But it is not the government's use of the lands taken from appellee which has created this hazard. It is the use which, it is anticipated, the government will make of its own unused forest lands abutting the lake which has caused this element of depreciation.

We can sympathize with appellee in its resentment against public intrusion upon the solitude which it has heretofore enjoyed. It has, however, no right to insist that the United States so use its forest lands as to protect appellee against such intrusion. Nor can it complain that the use made of the lands taken from it has increased the attractiveness of the government's forest lands. For this element of depreciation there can, under Campbell, be no recovery.

The jury verdict did not segregate the various elements of damage and we have no way of knowing to what if to any extent fire hazard was reflected in its award.

However, the highest figure placed on this element of depreciation by appellee's witnesses was $14,300.00, and the maximum effect of the error is thus established by the record. The case then is an appropriate one in which to grant appellee the right to remittitur as an alternative to reversal and full new trial.

It is ordered:

(1) that if appellee within fifteen days remits to the clerk of the district court the sum of $14,300.00 of the judgment awarded by that court and certifies to the clerk of this court that such remittitur has been made, judgment in such reduced sum of $580,700.00 shall be affirmed;

(2) that if appellee does not make such remittitur, judgment shall be reversed and this cause remanded for new trial.