UNITED STATES of America, Appellee,

v.

10.0 ACRES, etc., et al., and 33.4 Acres, etc., et al., Defendants,

Gesford P. Wright and Marie R. Wright, Appellants.

No. 74–1286.

United States Court of Appeals, Ninth Circuit.

Feb. 17, 1976.

Rehearing and Rehearing En Banc Denied June 7, 1976.

Peter F. Windrem (argued), Santa Rosa, Cal., for appellants.

Carl Strass, Atty. (argued), Dept. of Justice, Washington, D.C., for appellee.

Before BROWNING, CARTER and GOODWIN, Circuit Judges.

GOODWIN, Circuit Judge:

This is an appeal from a directed verdict denying compensation for appellants' interest in a private road condemned and opened

to the public by the United States Forest Service.

Gesford P. Wright and Marie R. Wright contend that the district court erroneously denied them the opportunity to present evidence of compensable loss.

The road in which the Wrights owned an interest was taken by the United States to provide public access to the Mendocino National Forest. Before the condemnation, the road served two tracts of land owned by appellants and an adjoining tract owned by a timber company (Fibreboard Paper Products Corporation). The road crossed five parcels of private property, a section owned by the United States (one mile), and then crossed Fibreboard land for another four miles.

Fibreboard, the Wrights, and one Whitely purchased exclusive easements (for themselves and their permittees) across the five privately owned parcels, and obtained a use permit to cross the federally owned lands. They then constructed a road which, with existing roads, created access to their properties. Locked gates were placed before the five private parcels, after the five parcels, at the access road to appellants' property, and at the end of the Fibreboard tract.

Each of the deeds granting appellants an easement describes the easement as exclusive. None reserves in the grantors the right to convey similar easements to others. In two of the deeds, the grantors retained the right "to the use of said right of way in connection with the use of Grantor's own lands adjoining said right of way." This right is available "to the extent reasonably required by the normal and convenient use of [Grantor's] lands, provided that the exercise by Grantees of their rights hereunder shall not thereby be interfered with  *  *.'" Under another deed, the right of access retained by the grantor is declared personal and nonassignable and is limited to the grantors, their employees, and family. Another deed reserves the right to use the right-of-way in common with the grantees "provided that the use of the right of way by Grantees is not thereby interfered with."

Finally, in yet another deed, the grantees acquire:

" *  *  *  [E]xclusive possession of the surface of the whole right of way, provided Grantors shall be entitled, to the extent reasonably required by the normal and convenient use of their lands and provided that the exercise by Grantees of their rights hereunder shall not thereby be interfered with, to cross and to permit their livestock to cross from their lands on one side of the right of way to their lands on the other over any portion of the right of way."

When the United States condemned all private portions of the deeded road and made the road public, all gates were removed, except the gates between appellants' property and the now public road. The appellants' lands do not abut the subject road at any point.

At trial, appellants asserted that their one-third interest in the road had a cash market value. They offered their evidence of value: (1) by showing the cost of replacing the road at the time of the taking; (2) by showing the capitalized value of anticipated income from tolls charged for the use of the road by loggers; (3) by opinion evidence of the market value of the road; and (4) by establishing the difference between the market value of their dominant land before and after the exclusive easement was extinguished—with and without the exclusive quality of the access and the right to maintain locked gates.

The district court properly rejected the first and third theories because there is no need to replace or relocate any road. Appellants had the use of a road before the taking; and after the taking they still have the use of a road.

With respect to the second theory, appellants concede that they had no proof of lost toll income. They had never used the road for income purposes and had no specific plan to do so.

The more difficult question is whether the court should have permitted the expert to express an opinion on the "before and

after" value of appellants' noncontiguous but dominant estate, when the government took the servient estate.

In *United States v. Welch*, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910), the owner of a tract of land claimed a compensable taking when his private right-of-way across the lands of others was flooded as a result of the government's construction of a dam. The court held that the right-of-way was an easement, which in turn was an interest in land, and that the taking thereof entitled its owner to compensation. The court valued the loss of the easement by reference to its value to the dominant estate. In *Welch*, the before-and-after valuation of the dominant estate was employed to calculate the loss in the context of a complete physical destruction of the easement.

In the case at bar, as in *Welch*, there is a taking of the servient estate and a loss to the dominant. Unlike *Welch*, the road and the right to use it are still intact, but the road's exclusivity has been destroyed. It is the market value of the loss of exclusivity which appellants sought to prove.

The United States asserts that exclusivity is a noncompensable interest, citing *United States v. Pope & Talbot, Inc.*, 293 F.2d 822 (9th Cir. 1961). *Pope & Talbot* denied recovery in condemnation for the increased risk of fire to claimant's properties threatened by the projected opening of adjoining federal lands to the public. Neither the condemnation itself nor the projected use of the lands taken from Pope & Talbot increased this hazard. The hazard, if one existed, lay in the potential carelessness of the general public.

In denying recovery, the court stated:

"We can sympathize with appellee in its resentment against public intrusion upon the solitude which it has heretofore enjoyed. It has, however, no right to insist that the United States so use its forest lands as to protect appellee against such intrusion. Nor can it complain that the use made of the lands taken from it has increased the attractiveness of the government's forest lands. For this ele-

ment of depreciation there can \* \* \* be no recovery." 293 F.2d at 826.

▮ The court in *Pope & Talbot* does not declare that loss of privacy is never compensable; but it does indicate that the law does not ordinarily provide a remedy against the government for depreciation in land value caused by changes incident to civilization. Here, however, appellants complain that the government has taken away their interest in a tract of land (the easement), destroying the exclusivity of use for which appellants paid the underlying fee owner. The value of this power to exclude others is reflected in the before-and-after valuation of the dominant estate. See *United States v. Welch*, 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787 (1910). That the value of the right to exclude others may be equivalent to damage done to the dominant estate does not alter the fact that the compensation is not for the damage to the dominant estate but rather for loss of the exclusive easement itself.

No California or federal case cited to us is squarely on point, but a number of other courts have considered similar questions and have denied recovery. 1 L. Orgel, *Valuation Under the Law of Eminent Domain* § 111, at 470 n.25 (2d ed. 1953). The strongest case for the government is *In re Appeal of Sowers*, 175 Minn. 168, 220 N.W. 419 (1928).

Sowers and others owned wooded lots in a forest recreation area. To facilitate access to these lots, Sowers and associates purchased an easement across the property of another, constructed a road, and installed locked gates. The township constructed a public highway, and incorporated the Sowers road into it. When Sowers sought compensation for this "taking", the court replied:

"In this case all the appellants had in this strip of land was the privilege of using it. The inclusion of this strip in the public road did not take from them the right to use this strip of land. \* \* \* The broadening of the easement to the public generally did not in law destroy or

take away their privilege \* \* \* [citation omitted]." 220 N.W. at 420.

In *Sowers*, the deeds did not create exclusive easements. Here they did.

Appellants have argued with commendable candor that the case law seems to be against them, but that when their easement is exclusive "the law ought to be otherwise". Appellants point out that their land is diminished in value when the government extinguishes an exclusive easement in a right-of-way leading to their land and converts what had been a quiet wooded sanctuary into just another "house by the side of the road". The government answers, in effect, "Yes, but it wasn't your property that was taken."

Appellants concede that they cannot recover under the Fifth Amendment for the loss of market value to their land merely because the government takes the land of another and thereby opens up the neighborhood to potential vandals, poachers, litter throwers, and the like. *United States v. Pope & Talbot, Inc., supra.* Appellants point out, however, that here the government has not merely taken the lands of others (the underlying fee beneath the roadway) but has also taken and destroyed the appellants' interest in those lands: their right to exclude all others from the roadway. This, the appellants say, is a taking, and they are entitled to be paid for that which was taken.

The offer of proof is, in effect, that real estate appraisers are prepared to describe in monetary terms the loss of value suffered by secluded forest "retreats" when nearby public improvements open the neighborhood to some of the negative aspects of civilization and progress. Once a taking "nexus" is established, argue the appellants, the resulting loss, if any, is a question for the jury to decide. We agree. If loss of value to the dominant estate is in fact caused by the government's destruction of the exclusive easement, then there is a taking from the appellants as well as from the owners of the fee under the easement (who have been paid and are not involved in this case).[1]

Here, witnesses having knowledge of the market offered to testify that, in fact, the market value of the dominant land drops when a private road leading to that land is converted into a public road. The loss of the exclusivity of the easement is a direct loss that is reflected in the market place, and, because the loss results from a taking of an interest in land, it is compensable.

In one sense, we may be going beyond the holding of the earlier cases. In the days when the building of public roads was considered a benefit to all surrounding land, the notion that the owner of a private road could force payment by the government for improving the road and making it public received short shrift in the courts.[2]

1. The government relies on *Cole Investment Co. v. United States*, 258 F.2d 203 (9th Cir. 1958), and other severance-damage cases in rejecting for this case a before-and-after valuation. The cases are not in point. In a claim for severance damages, the property actually taken is given a market value. The diminution in value of the remaining contiguous lands caused by the taking is then appraised and included in the recovery. The cases hold that the condemned and severed properties must have been owned together and have been either part of the same parcel or subject to unitary use to warrant a severance award. These concepts have no application to the taking of this easement. *See United States v. 765.56 Acres of Land*, 174 F.Supp. 1, 14 (E.D.N.Y.1959), affirmed sub nom. *United States v. Glanat Realty Corp.*, 276 F.2d 264 (2d Cir. 1960). Here the exclusive easement is the condemned property. That the value of the easement is measured by

reference to the dominant estate does not render the value analysis a severance inquiry.

2. The court's treatment in *In re Sowers, supra*, is not unique. Similar cases in other jurisdictions have either cited *Sowers* with approval, *City of Bellevue v. Underwood*, 59 Wash.2d 793, 370 P.2d 861 (1962) (nonexclusive private easement), or held, independently of *Sowers*, that no compensation can be recovered for the inclusion of a private road in a public highway. *Clayton v. Gilmer County Court*, 58 W.Va. 253, 52 S.E. 103 (1905); *Cook County v. Vander Wolf*, 394 Ill. 521, 69 N.E.2d 256 (1946) (dictum); *but see City of Miami Beach v. Belle Isle Apartment Corp.*, 177 So.2d 884 (Fla.App.1965) (portion of private road used by owners for other private purposes). The New York courts award only nominal damages when a noncommercial private way is merely opened to the public. *Compare In re Avenue Between Fort*

However, an "exclusive easement is an unusual interest in land; it has been said to amount almost to a conveyance of the fee." 2 Thompson on Real Property § 246 (1961), citing *City of Pasadena v. California-Michigan Land & Water Co.*, 17 Cal.2d 576, 110 P.2d 983 (1941). Where an easement owner has the right to exclude all but the grantor himself and the grantor retains no right to terminate or dilute that exclusivity, we would be ignoring reality if we said the destruction of that right was not a compensable loss.

If in fact the evidence supports the appellants' claim, the dominant tenement suffered a decrease in value when the government opened up the exclusive road, removed the locked gates, and made the once remote property easily accessible to trespassers. This is a matter for proof. The court below denied the easement owner the opportunity to put on that proof.

We do not put this holding on the basis of state law which allows recovery for consequential damages. *Cf.* Cal.Const., Art. 1, § 19 (replacing former § 14, repealed Nov. 5, 1974); *Rose v. State*, 19 Cal.2d 713, 123 P.2d 505 (1942). We base the landowner's right to introduce his value evidence on the theory that his exclusive easement was itself a property right that was taken from him when the fee was purchased by the government and turned over to the public.

Reversed and remanded.

JAMES M. CARTER, Circuit Judge (dissenting):

I respectfully dissent.

The majority opinion would create by judicial fiat a new right for landowners in condemnation cases. It is contrary to a line of cases holding that a landowner may recover damages for a taking but not for consequential damages. *Campbell v. United States*, 266 U.S. 368, 370–72, 45 S.Ct. 115, 69 L.Ed. 328 (1924). That case also held, in

particular, that harm done by the Government's use of lands once owned by third parties was mere consequential damages.

*Campbell* was essentially a severance case where the landowner recovered the value of the portion condemned and the diminution of the value of an *adjoining* parcel. But this was not the real issue litigated. The landowner was also seeking an enhanced value to the adjoining parcel because of the increased use of condemned land once owned by third parties.

*Campbell* cannot be read out of our case by saying that appellants herein were only seeking compensation for the taking of their own easement in the roadway. They were claiming that their non-adjoining land was now less valuable because their right to solitude and privacy in that land was decreased by the additional usage of third parties' lands, now that the road, after condemnation, was a public road.

*Campbell* stated:

". . . The [trial] court found that the damages to the remainder of plaintiff's estate from the use to be made of lands acquired from others resulted chiefly from the probability that the tract, improved as it has been by the United States, will be sold and used for industrial purposes.

"The taking was under the sovereign power of eminent domain. . . . Thereupon he became entitled to have the just compensation safeguarded by the Fifth Amendment to the Constitution; that is, the value of the land taken and the damages inflicted by the taking . . . .. But he was not entitled to have more than that.

". . . *The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not consti-*

*Washington and Haven Avenues in City of New York*, 153 App.Div. 164, 138 N.Y.S. 107 (1912), *and In re East 5th St., Borough of Manhattan, City of New York*, 1 Misc.2d 977, 146 N.Y.S.2d 794 (1955) (dictum), *with In re West*

*10th St., Borough of Brooklyn, City of New York*, 267 N.Y. 212, 196 N.E. 30 (1935) (private way opened and commercially valuable signs removed and parking rights ended).

tute a *taking of his property. Richards v. Washington Terminal Co.*, 233 U.S. 546, 554 [34 S.Ct. 654, 58 L.Ed. 1088, L.R.A. 1915A, 887]. Plaintiff had no right to prevent the taking and use of the lands of others; and the exertion by the United States of the power of eminent domain did not deprive him of any right in respect of such lands. And, if the land taken from plaintiff had belonged to another, or if it had not been deemed part and parcel of his estate, he would not have been entitled to anything on account of the diminution in value of his estate. It is only because of the taking of a part of his land that he became entitled to any damages resulting to the rest. In the absence of a taking, the provision of the Fifth Amendment giving just compensation does not apply; and there in no statute applicable in this case that enlarges the constitutional right. If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put  .   .   . they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users."   .   .   .
"The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, *does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking.*" (Citations omitted; emphasis added). *Id.* 266 U.S. at 371–372, 45 S.Ct. at 116.

Since appellants here contend that the increased use of the public road and the land adjoining their property will decrease their solitude and privacy, they had suffered only consequential damage.

*United States v. Miller*, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943), states

"  .   .   .   [A] parcel of land which has been used and treated as an entity shall

be so considered in assessing compensation for the taking of part or all of it.,

"This has begotten subsidiary rules. If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage. On the other hand, if the taking has in fact benefited the remainder the benefit may be set off against the value of the land taken.

"*As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages;* and unless the legislature so provides, as it may, benefits are not assessed against such neighboring tracts for increase in their value. (Emphasis added.)

*Batten v. United States*, 306 F.2d 580, 583–84 (10 Cir. 1962), *cert. den.*, 371 U.S. 955, 83 S.Ct. 718, 9 L.Ed.2d 731 (1963), held that:

"In construing and applying this constitutional provision [nor shall private property be taken for public use, without just compensation] the federal courts have long and consistently recognized the distinction between a taking and consequential damages. In *Transportation Company v. Chicago*, 99 U.S. 635, 642, 25 L.Ed. 336, the Supreme Court held that governmental activities which do not directly encroach on private property are not a taking within the meaning of the Fifth Amendment even though the consequences of such acts may impair the use of the property. The principle was repeated in *United States v. Willow River Power Co.*, 324 U.S. 499, 510, 65 S.Ct. 761, 89 L.Ed. 1101, the Court saying that 'damage alone gives courts no power to require compensation.' We have recognized the rule in this circuit by our holding in *Harris v. United States*, 10 Cir., 205 F.2d 765, 767, that under the federal constitution 'damages to property not taken

are compensable only as a consequence of or incidental to an actual taking.'

"Because of this rule which denies the recovery of consequential damages in the absence of any taking, many state constitutions provide in substance that private property shall not be taken or damaged for public use without compensation. However, the federal obligation has not been so enlarged either by statute or by constitutional amendment." (Footnotes omitted).

*Nunnally v. United States*, 239 F.2d 521, 523–24 (4 Cir. 1956), states:

"The rule, that 'acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not be a taking within the meaning of the constitutional provision', was stated by the Supreme Court in *Transportation Co. v. Chicago*, 99 U.S. 635, 25 L.Ed. 336. It has been restated in similar terms many times since, e. g. 'The Constitution provides that private property shall not be taken without just compensation, but a distinction has been made between damage and taking, and that distinction must be observed in applying the constitutional provision.' *Bedford v. United States*, 192 U.S. 217, 224, 24 S.Ct. 238, 240, 48 L.Ed. 414."

Appellants claim their solitude and privacy in their land, which does not adjoin the easement taken, have been lost because the public, using other land, can come nearer to them and can cross and use the various third-party holdings. The *Campbell* case and the others cited above are squarely against the appellants.

The material facts of *In re Appeal of Sowers*, 175 Minn. 168, 220 N.W. 419 (1928), are nearly identical to those involved here. Sowers and others owned wooded lots in a forest recreation area. To facilitate access to these lots, Sowers and associates purchased an easement across the property of another and constructed a road. Sowers treated this as an exclusive right-of-way by installing a locking gate and charging non-

permittees for entry. Subsequently, the township entered the area and constructed a public highway. The Sowers road was incorporated into it and the gate removed. When Sowers sought compensation for this "taking", the court replied:

" * * * This was an easement which is property and, when taken for public use the owner is entitled to compensation therefor. But the taking in such case must be real, actual and involve a loss.

"In this case all the appellants had in this strip of land was the privilege of using it. The inclusion of this strip in the public road did not take from them the right to use this strip of land. * * * The broadening of the easement to the public generally did not in law destroy or take away their privilege * * * [citation omitted]." 220 N.W. at 420.

The majority distinguishes *Sowers* on the ground that the deeds did not create exclusive easements in Sowers. However, the court in *Sowers* did state that "Sowers treated the easement as exclusive and closed the road with gates which he locked and furnished keys to those whom he permitted to use the road." 220 N.W. at 420. Therefore in fact Sowers exercised an exclusive easement, presumably with the knowledge and consent of the fee holder. Nevertheless, Sowers was denied compensation for the loss of his "exclusivity" (whether in deed or in fact) and his loss of privacy was not compensated.

Similar cases in other jurisdictions have either cited *Sowers* with approval, *City of Bellevue v. Underwood*, 59 Wash.2d 793, 370 P.2d 861 (1962) (nonexclusive, private easement), or held, independently of *Sowers*, that no compensation can be recovered for the inclusion of a private road in a public highway. *Clayton v. Gilmer County Court*, 58 W.Va. 253, 52 S.E. 103 (1905); *Cook County v. Vander Wolf*, 394 Ill. 521, 69 N.E.2d 256 (1946) (dictum); *but see City of Miami Beach v. Belle Isle Apartment Corp.*, 177 So.2d 884 (Fla.App.1965) (portion of private road used by owners for other private purposes). The New York courts award only nominal damages when a noncommer-

cial private way is merely opened to the public. *Compare In re Avenue Between Fort Washington and Haven Avenues in City of New York*, 153 App.Div. 164, 138 N.Y.S. 107 (1912); and *In re East 5th St., Borough of Manhattan, City of New York*, 1 Misc.2d 977, 146 N.Y.S.2d 794 (1955) (dictum), with *In re West 10th St., Borough of Brooklyn, City of New York*, 267 N.Y. 212, 196 N.E. 30 (1935) (private way opened and commercially valuable signs removed and parking rights ended).

In *United States v. Pope & Talbot, Inc.*, 293 F.2d 822 (9 Cir. 1961), the government condemned appellee's land. This land, as well as some of the government's land, was flooded by a dam reservoir. The appellee contended that the lake would attract people to the remaining United States forest lands, creating a fire hazard to appellee's remaining lands. The appellee was deprived of land *and* a road which it owned in part and had a right of way to another part. The court held that the appellee should be compensated for the loss in market value due to the reduced accessibility of his land (the entire road was flooded and a lake created), but not for the increase in public use of the area and resulting loss of privacy. The court said the appellee could not "complain that the use made of the lands taken from it has increased the attractiveness of the government's forest lands." *Id.*, p. 826.

Similarly, in the case at bar, the appellants cannot complain that the use of the lands taken will increase the attractiveness of the nearby forest lands.

The majority seek to distinguish *Pope* on the ground that there the sole cause of injury was the fire hazard from the forest land and not from the use of his condemned land. However in *Pope*, as here, the land condemned contributed to the increased use of the forest lands (the lands were now part of an attractive lake), and therefore in some measure caused the increase in fire hazard and the decrease in the value of appellee's remaining land.

In *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 178–9 (9 Cir. 1950), the plaintiff had a long-term lease on the land taken which adjoined land owned by him in fee simple and whose market value was reduced by the taking. The court stated the basic rule as to severance damage:

"The rule requiring compensation for loss in market value of the remainder of the tract is applied strictly only where there is but a single parcel owned by one party in fee simple. An extension of the doctrine permitted the inclusion of another parcel in the same ownership if it lay contiguous to the principal tract. . . . With some reluctance, the courts have held that the owner of one parcel *in fee* may be compensated for loss in market value thereof as a result of the taking of another parcel owned *in fee* by him, even if the latter is not contiguous, provided that, by actual and permanent use, a unitary purpose is served by both parcels." (Footnotes omitted, emphasis added).

In the present case, appellants did not own the road in fee simple. In fact, they had an undivided one-third interest in several separate easements, and a right-of-way at sufferance over a Government segment of the road.

Citing *Campbell, supra*, the court further stated:

"Where part of a tract in fee ownership is condemned, the loss in market value of the remainder cannot be augmented by consideration of the damage caused thereto by the taking or prospective use of lands held by third parties in fee simple as part of the same project." *Id.*, 182 F.2d at 179.

Although an easement rather than a lease is involved in our case, the principle is the same, particularly since in this case appellants can still use the road, can still have a locked gate between the public road and their access road, and the road nowhere abuts their property. The appellants failed to present any evidence that they had any valuable interest in the road, that is, an interest for which anyone without sentimental attachment to the area would pay money. As the Supreme Court said in *Kimball Laundry Co. v. United States*, 338 U.S.

1, 5, 69 S.Ct. 1434, 1437, 93 .L.Ed. 1765 (1949):

> "The value of property springs from subjective needs and attitudes; its value to the owner may therefore differ widely from its value to the taker. Most things, however, have a general demand which gives them a value transferable from one owner to another. As opposed to such personal and variant standards as value to the particular owner whose property has been taken, this transferable value has an external validity which makes it a fair measure of public obligation to compensate the loss incurred by an owner as a result of the taking of his property for public use. In view, however, of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it, like loss due to an exercise of the police power is properly treated as part of the burden of common citizenship. See *Omnia Commercial Co. v. United States*, 261 U.S. 502, 508–09 [43 S.Ct. 437, 438, 67 L.Ed. 773]. Because gain to the taker, on the other hand, may be wholly unrelated to the deprivation imposed upon the owner, it must also be rejected as a measure of public obligation to require for that deprivation. *McGovern v. New York*, 229 U.S. 363 [33 S.Ct. 876, 57 L.Ed. 1228, 46 L.R.A., N.S. 391]; *United States ex rel. T.V.A. v. Powelson*, 319 U.S. 266 [63 S.Ct. 1047, 87 L.Ed. 1390].

> "The value compensable under the Fifth Amendment, therefore, is only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent. Its measure is the amount of that equivalent."

Appellants seek help from cases like *United States v. Welch*, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910). The facts are set forth in the majority opinion. The Court upheld the lower court's award, which valued the loss of the easement by considering the easement's value to the owner's dominant estate. *Welch*, however, does not save the appellants. In *Welch*, the valuation standard was applied in the context of a complete physical destruction of the access route. There was both a taking and a loss of value to the dominant estate.

In the case at bar, both the road and appellants' right to use it are still intact. There has been no taking from the appellants. Indeed, the road is better now than before.

Finally, the contention of *exclusiveness* of the easement held by appellants is what seems to have led to the majority result. The majority assumes the easement is "exclusive." Such an absolute characterization renders their argument easier, but ignores the facts.

The appellants and two others acquired an interest in the easements. Whitely and Fibreboard (a timber company) owned the other two interests. The Government had right of access for its employees and permittees, at least for the part of the road traversing Government property. It is true that none of the grantors were empowered to grant additional easements or to interfere with the grantees' easements. However, each of the three grantees could allow their "permittees" to use the road. Thus there was an unlimited number of persons (the three parties to the easements, the Government, and the agents and permittees of each) who could use the road built on the easements. Therefore, appellants did not have the *exclusive* power to determine who could traverse the road, and their easement was anything but exclusive.

If the appellants were the only persons holding an interest in the easement, they could limit the number of persons using the road. But in our factual situation they did not have the power of limitation.

The majority's error is shown on p. 7 (p. 7, lines 28–32 of the typewritten draft), where it is stated:

> "Where an easement owner has the right to exclude all but the grantor himself and the grantor retains no right to terminate or dilute that exclusivity, we would be ignoring reality if we said the

destruction of that right was not a compensable loss."

The facts are to the contrary.

The judgment below should be affirmed.